**STATE of Minnesota, Respondent,**

**v.**

**Mose LINDSEY, Appellant.**

**No. C2–89–2280.**

Court of Appeals of Minnesota.

Sept. 25, 1990.

Review Granted Nov. 15, 1990.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., Darrell C. Hill, Asst. County Atty., St. Paul, for respondent.

Barry V. Voss, Minneapolis, for appellant.

Considered and decided by GARDEBRING, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal is from a judgment of conviction for possession of cocaine with intent to distribute. Minn.Stat. §§ 152.09, subd. 1(1), 152.15, subd. 1(2) (1988). Following an adverse ruling on his motion to suppress evidence seized pursuant to a search warrant, appellant Mose Lindsey waived a jury trial and was found guilty on stipulated facts. Upon examination of law governing telephonic application for a warrant, we reverse.

## FACTS

Police began surveillance of a St. Paul apartment shared by Carol Middlebrooks and appellant Mose Lindsey in late October 1988. They had received information from a confidential informant who had been present in the apartment and observed several sales by Middlebrook of crack or cocaine. Two weeks later, they received information from another confidential informant who had seen a red-haired white male making frequent trips to the apartment. The other informant said this man had bought drugs from Lindsey and Middle-brooks. Middlebrooks had a history of numerous arrests for possession of controlled substances, and Lindsey had a record of one such arrest.

The surveillance officers observed considerable traffic to and from the apartment, and the apartment management reported complaints about this traffic. On November 2, 1988, after about a week of surveillance, police saw the red-haired male, later identified as Timothy Ernst, talking in the apartment complex parking lot to the occupants of a Wisconsin-licensed car. Ernst then went up to Apartment 244, and returned and entered the car. Although the surveillance officer, Ramsey County Deputy Hankee, did not see anything change hands, he suspected a drug transaction occurred in the car. During this meeting, and before and after it, two men stood at the two entrances to the apartment building, and the officer thought they may have been on watch to protect persons engaged in drug traffic.

Deputy Hankee and other officers followed the Wisconsin car for a mile and a half after it left the parking lot, and then stopped it. A substance appearing to be cocaine was visible on the dashboard of the car. The occupants of the car were Marilyn Hill and Walter Burch. They were arrested at approximately 12:30 p.m. Hill told the officers Burch bought the cocaine from Tim Ernst, and Burch believed Ernst had gotten it from a man named Lindsey. Both indicated that Burch was not involved in the purchase but was only giving Hill a ride.

Hill and Burch were taken to jail. However, while Burch was in the squad car at Dale and Iglehart, he was seen gesturing to bystanders. He was also talking to people on the street, but it was unclear from police testimony whether the squad car windows were open.

Deputy Hankee testified he suspected Burch could be a courier from the drug-selling operation, and might have been trying to get some message to the bystanders. Thus, Hankee testified, he thought it possible Middlebrooks and Lindsey might de-

stroy or move evidence if Burch did not return. He called an assistant county attorney, explained the circumstances, and asked him if he thought he could get a telephonic search warrant. The attorney suggested he call a judge.

After numerous attempts, Deputy Hankee reached a trial judge at the Ramsey County Courthouse at 1:09 p.m. Deputy Hankee, who was calling from outside the Lindsey–Middlebrooks apartment building, estimated the courthouse was less than two miles away.

Deputy Hankee testified he told the issuing judge everything that was later typed into the search warrant application, and reported that he was placed under oath during the telephone conversation. Hankee's conversation with the judge was not recorded. The judge approved the search of the apartment and later signed a written search warrant. A significant quantity of cocaine was seized from the apartment.

## ISSUE

Did the trial court abuse its discretion in admitting evidence seized pursuant to the telephonic search warrant?

## ANALYSIS

Minn.Stat. § 626.05, subd. 1 (1988) defines a search warrant as "an order in writing." According to statute, a warrant may not issue "but upon probable cause, supported by affidavit." Minn.Stat. § 626.08 (1988). The magistrate may receive sworn oral testimony, Minn.Stat. § 626.09 (1988), but "[t]he affidavit or affidavits must set forth the facts tending to establish the grounds of the application." Minn.Stat. § 626.10 (1988).

The supreme court in *State v. Andries*, 297 N.W.2d 124, 125 (Minn.1980) upheld a telephonic search warrant procedure where there was a tape recording of the officer's telephone report to the judge. Noting the procedure followed was very close to that required by Fed.R.Crim.P. 41(c)(2), the court stated:

In upholding the warrant issued in this case, we do not mean to sanction the indiscriminate use of such a procedure nor do we suggest that all telephone warrants, no matter what procedure is used, will be valid.

*Id.* at 125–26 (footnote omitted).

*Andries* suggests the use of a telephonic search warrant procedure must be justified by a reasonable demonstrated need. *Id.* at 126 (noting a "demonstrated need" for the procedure); *see also* Fed.R. Crim.P. 41(c)(2)(A) (circumstances must make it reasonable to dispense with written affidavit). We conclude it would be indiscriminate to allow the use of the procedure without such a showing of need.

In *Andries*, the police had information that the targets of their investigation into a marijuana operation would soon leave town. *Andries*, 297 N.W.2d at 125. The nearest judge was 85 miles away. *Id.* Here, the courthouse was less than two miles away. The police had only a suspicion they had arrested a drug courier. They could speculate on a possibility the arrest might lead to destruction of evidence at the Lindsey–Middlebrooks apartment. In addition, the record does not show what the officer revealed to the issuing judge on the facts thought to show a need for the telephonic search warrant. *Cf.* Fed.R. Crim.P. 41(c)(2)(C) (federal magistrate must review showing of need). Thus, the record does not permit us to conclude the police made a showing of need or could demonstrate a reasonable need for dispensing with a written warrant application.

Lindsey also contends the telephonic search warrant procedure was invalid because the police-court telephone conversation was not recorded. However, in *State v. Meizo*, 297 N.W.2d 126, 129 (Minn.1980), the supreme court held that the failure to record testimony supplementing a written warrant application did not invalidate the warrant where

it is clear, from sworn testimony in the record before us, that the magistrate had sufficient sworn testimony before him to properly find probable cause.

*Id.*

The record supports the trial court's finding that the issuing judge was told, over

the telephone, the same facts stated in the later-prepared affidavit. Those facts support a finding of probable cause. Because cause for a warrant is amply shown, and because we cannot meaningfully distinguish the supplementary nature of the unrecorded testimony in *Meizo*, we follow the *Meizo* holding that a contemporaneous recording is not an absolute requirement.

Notwithstanding our holding on the failure to record the officer's report to the court, we agree with appellant that the use of a telephonic warrant procedure without recording is ill advised. *See Meizo*, 297 N.W.2d at 129–30 (Wahl, J., dissenting); *State v. Burch*, 284 Minn. 300, 308, 170 N.W.2d 543, 549 (1969); *see also Boyer v. Arizona*, 455 F.2d 804, 807 (9th Cir.1972) (Ely, J., dissenting); Fed.R.Crim.P. 41(c)(2)(D). Even where probable cause is clear, the failure to record the call creates the danger that the state will need to establish critical facts by requiring the issuing magistrate to testify. *Meizo*, 297 N.W.2d at 129 (Todd, J., concurring specially). This hazard was evident in this case; there is no written verification from the issuing judge, and judicial testimony may have been needed to show the officer's report of facts or to show whether he was placed under oath.

We reject the state's other arguments in support of the warrant process employed here. First, Minnesota has so far declined to apply the good faith exception. *State v. McCloskey*, 451 N.W.2d 225 (Minn.App. 1990), *reversed* 453 N.W.2d 700, 701 n. 1 (Minn.1990) (declining to address *Leon* good faith exception, although suggested in court of appeals dissent). Moreover, in this state the telephonic search warrant is not a recognized procedure in which a police officer could have an objective good faith belief. *See generally United States v. Leon*, 468 U.S. 897, 919 n. 20, 104 S.Ct. 3405, 3419 n. 20, 82 L.Ed.2d 677 (1984) (emphasizing objective nature of "good faith" standard of reasonableness). We observe there are no statutory provisions to guide judges in authorizing telephonic search warrants. *Cf.* Minn.Stat. § 626.14 (1988) (statutorily-required showing for warrant authorizing nighttime search).

Even if such guidelines existed, the lack of a showing of need and the failure to record the application would not be minor or technical omissions. *Cf. State v. Quinn*, 436 N.W.2d 758, 767 (Minn.1989) (not every technical omission from compliance with wiretap statutes would justify suppression).

Similarly, there is no reason to allow admission of evidence by charging error in an invalid telephonic search warrant to the judge rather than the police. *See State v. Lien*, 265 N.W.2d 833, 840 n. 1 (Minn.1978) (questioning how far the exclusionary rule should apply where there is no police misconduct because police obtained a warrant). The police, not the court, chose the telephone contact initially, and the police fully participated in the telephone process. Moreover, the telephone warrant application, because it is a novel procedure still ungoverned by guidelines, and because it does not permit the court to personally observe the applicant, makes the issuing judge more dependent on the officer's judgment than in the issuance of a warrant by the familiar process of written application.

### DECISION

It was error to admit evidence seized pursuant to this telephonic search warrant.

Reberved.