**STATE of Minnesota, Appellant,**

v.

**Mose LINDSEY, Respondent.**

**No. C2-89-2280.**

Supreme Court of Minnesota.

Aug. 16, 1991.

Rehearing Denied Sept. 13, 1991.

Hubert H. Humphrey, III, Atty. Gen., and Tom Foley, Ramsey County Atty., Darrell C. Hill, Asst. Ramsey County Atty., St. Paul, for appellant.

Barry V. Voss, Calhoun Square, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae.

KEITH, Chief Justice.

We granted the state's petition for review of the court of appeals' decision reversing the conviction of Mose Lindsey of possession with intent to distribute cocaine. The drugs were found by police in an apartment used by Lindsey in a search authorized by a judge over the telephone after the applicant established probable cause. The trial court denied Lindsey's motion to suppress, finding no constitutional violation and that the statutory noncompliance did not warrant suppression of the evidence.

The court of appeals reversed, concluding that the applicant failed to establish a need for dispensing with the normal requirement that the application be in writing and therefore suppression of the drugs found in the search was required. *State v. Lindsey,* 460 N.W.2d 632, 634–35 (Minn.App.1990). We reverse the decision of the court of appeals and reinstate the judgment of conviction.

I

In late October, 1988, Deputy Michael Hankee, an experienced narcotics officer with the Ramsey County Sheriff's Department, received information from two confidential informants about drug dealing at a specific unit in a St. Paul apartment complex. Deputy Hankee surveilled that location for a few days, for two hours or so at a time, during which he learned from the building management that there was heavy traffic into and out of the apartment, and that Lindsey had been making rent payments while the lessee was away. Hankee also learned that Lindsey had been arrested in September for possession of a controlled substance and that the lessee of the apartment had been arrested in 1985, 1987 and twice in 1988 for possession of controlled substances. The mother of the lessee had previously contacted Deputy Hankee to complain that defendant, who was living with her daughter, had involved her daughter in drug use. Another confidential informant also revealed that a white male with red hair was involved in the drug sales at this address.

On November 2, 1988, at approximately 11:00 a.m., Hankee observed the red-haired male meeting with the occupants of a car in the parking lot of the complex for approximately five to ten minutes. The red-haired male then exited the car and entered the apartment building and the unit under surveillance. One of two men Hankee identified as lookouts approached the vehicle and spoke with the two occupants. The vehicle then moved to just outside the window of the apartment, so anyone in the apartment could have looked down to see them. The red-haired male left the apartment, got into

the car and met with the occupants for two to three minutes.

Based on these observations and their professional experience, Hankee and the surveillance officer accompanying him believed a drug transaction had taken place. They followed the car to the intersection of Dale and Iglehart, where they pulled over the vehicle. As he approached the vehicle, Hankee observed a baggie containing what appeared to be rock cocaine on the dashboard. At 12:30 p.m., Hankee arrested the occupants, Walter Burch and Marilyn Hill, who told the officers the cocaine was purchased from a red-headed male at the apartment building, and that this male got the cocaine from a man named Lindsey. They also told Hankee that Burch was just giving Hill a ride and that Burch had no involvement with the cocaine. While making the arrest at Dale and Iglehart, Hankee observed Burch, who was sitting in the back seat of the squad car, talking and making signals to a group of people on the sidewalk nearby. Hankee believed Burch was trying to get word back to the apartment that they had been arrested. Hankee determined Burch likely was expected back at the apartment building, and that if he did not return, or if word got back to the apartment of the arrest, evidence of other drugs there would be destroyed or moved.

Hill and Burch were taken to the jail and booked. Approximately thirty minutes after the arrest, Hankee returned to the apartment building and noticed the sentries still in place. Sitting in an unmarked car outside the complex, he called on his car phone an assistant county attorney and asked if he thought he could get a telephone warrant. The county attorney directed him to call a judge. Deputy Hankee reached a judge at approximately 1:09 p.m., explained the circumstances, and, when the judge assented to the telephone procedure, offered to tape record the conversation. The judge advised Hankee he did not think recording was necessary. At the *Rasmussen* hearing, Deputy Hankee testified he told the judge the names and criminal his-

tories of the suspects they were investigating, including defendant, and, using the format of the search warrant, the same observations that Hankee later detailed in the affidavit. The judge authorized the search and instructed Hankee to document the telephone conversation and to return it to the judge as soon as possible after the search.

Hankee executed the warrant at 1:40 p.m., approximately one hour and ten minutes after Burch and Hill were arrested. The officers found approximately 13 grams of cocaine, three scales, and $1,800 in cash in the unoccupied apartment. Lindsey and the lessee of the apartment returned while the search was in progress and were arrested. Hankee left with Lindsey a written inventory of the items seized, which is part of the warrant form, but did not prepare the actual warrant section of the form at the premises. Hankee left the scene at 4:30 p.m., went back to his office and prepared the search warrant and affidavit. Hankee testified that to prepare the search warrant he used the notes he had used when speaking with the judge over the phone, and that when presented with the written copy, the judge indicated it reflected the telephone conversation held earlier that day.

## II

■ The only constitutional error Lindsey charges in this appeal is the state's alleged failure to establish that Deputy Hankee was placed under oath for the telephonic warrant application.[1] The fourth amendment to the United States Constitution and article I, § 10 of the Minnesota Constitution require probable cause "supported by Oath or affirmation." U.S. Const. amend. IV, Minn.Const. art I, § 10. Based on Officer Hankee's testimony and the documents presented, the trial court determined Hankee had been placed under oath. The trial court's factual findings may be set aside only if clearly erroneous. Minn.R.Civ.P. 52.01. Because the finding Hankee was placed under oath is reason-

1. Accordingly, we need not reach the issue of whether a contemporaneous recording and demonstrated need to dispense with a written affidavit are constitutionally required.

ably supported by the record, the finding should not be set aside and Lindsey's claimed constitutional error must fail.

### III

The critical issue in this case is whether the noncompliance with Minnesota statutes, which do not provide for or anticipate the use of telephone warrants, requires the suppression of evidence obtained through the execution of this type of warrant.

The traditional process for the issuance of a search warrant is well known. During an investigation, the police officer becomes aware that a warranted search, rather than a warrantless search, is required. The officer may call a supervisor for advice and assistance. The officer then prepares a written application, affidavit and warrant. The officer may obtain help in doing this from other officers and/or from a prosecutor or assistant prosecutor. The officer then finds a judge—a neutral, detached magistrate—and presents the application, affidavit and warrant. The judge must either administer an oath to the affiant or insure that the affidavit shows on its face that it was sworn to by the officer. The judge, after reading the application and affidavit and after asking any questions of the affiant, must make an independent determination of whether probable cause exists. If the application fails to satisfy the judge, the judge may reject the application or return it to the officer for more information or investigation. If, on the other hand, the judge is satisfied that probable cause is present, the judge may approve the application and sign the warrant. The officer and his colleagues then execute the search warrant, typically after identifying themselves and announcing their authority and contemporaneously providing the party whose privacy is being invaded with a copy of the written inventory of items seized. The officer who obtained the warrant then files a return with the issuing judge indicating the date and time of executing and what property was seized. For a more detailed summary of the process, see R. Van Duizend, et al., *The Search Warrant Process* 15–40 (Nat'l Center for State Courts 1985).

One of the key factors of the traditional search warrant process is that it takes time in order to prepare the application, affidavit and warrant and to find a judge and secure the needed authorization—according to one study, conducted by the National Center for State Courts, an average of 3 to 4 hours. *Id.* at 87. Largely because of the cumbersome nature of the traditional search warrant process, the Advisory Committee to the Federal Rules of Criminal Procedure recommended the adoption of R. 41(d)(2), authorizing the issuance of a search warrant upon sworn oral testimony communicated by telephone or other appropriate means "[i]f the circumstances make it reasonable to dispense with a written affidavit." Rule 41(c)(2), which was approved by the United States Supreme Court in 1976 and adopted by Congress in 1977, provides:

**(2) Warrant upon Oral Testimony**

**(A) General Rule.** If the circumstances make it reasonable to dispense with a written affidavit, the Federal magistrate may issue a warrant based upon sworn oral testimony communicated by telephone or other appropriate means.

**(B) Application.** The person who is requesting the warrant shall prepare a document to be known as a duplicate original warrant and shall read such duplicate original warrant, verbatim, to the Federal magistrate. The Federal magistrate shall enter, verbatim, what is so read to such magistrate on a document to be known as the original warrant. The Federal magistrate may direct that the warrant be modified.

**(C) Issuance.** If the Federal magistrate is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or that there is probable cause to believe that they exist, the Federal magistrate shall order the issuance of a warrant by directing the person requesting the warrant to sign the Federal magistrate's name on the duplicate original warrant. The Federal magistrate shall immediately sign the original warrant and enter on the

face of the original warrant the exact time when the warrant was ordered to be issued. The finding of probable cause for warrant upon oral testimony may be based on the same kind of evidence as is sufficient for a warrant upon affidavit.

**(D) Recording and Certification of Testimony.** When a caller informs the Federal magistrate that the purpose of the call is to request a warrant, the Federal magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. If a voice-recording device is available, the Federal magistrate shall record by means of such device all of the call after the caller informs the Federal magistrate that the purpose of the call is to request a warrant. Otherwise a stenographic or long hand verbatim record shall be made. If a voice-recording device is used or a stenographic record made, the Federal magistrate shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court. If a long hand verbatim record is made, the Federal magistrate shall file a signed copy with the court.

**(E) Contents.** The contents of a warrant upon oral testimony shall be the same as the contents of a warrant upon affidavit.

**(F) Additional Rule for Execution.** The person who executes the warrant shall enter the exact time of execution on the face of the duplicate original warrant.

**(G) Motion to Suppress Precluded.** Absent a finding of bad faith, evidence obtained pursuant to a warrant issued under this paragraph is not subject to a motion to suppress on the ground that the circumstances were not such as to make it reasonable to dispense with a written affidavit.

The adoption of R. 41(c)(2) "has changed the equation used by the [federal] courts in determining the exigency of a given situation which is claimed to justify a warrantless search." E. Marek, *Telephonic Search Warrants: A New Equation for Exigent Circumstances,* 27 Clev.St.L.Rev. 35, 36 (1978). Or, as another commentator put it, "It may require reexamination of some of the traditional justifications for allowing searches without a warrant, since many of these turn on exigent circumstances that make it impracticable to obtain a warrant." 3 C. Wright, *Federal Practice and Procedure—Criminal 2d,* § 670.1 at 738–39 (1982). That is, the availability of a telephonic warrant process logically reduces the number of cases in which police can successfully claim that a warrantless search was necessary based on certain types of exigent circumstances. For example, if the circumstances are such that a delay of an hour or an hour-and-a-half to obtain a telephonic warrant would not likely result in the destruction of evidence but a delay of 3 to 4 hours likely would result in the destruction of evidence, the police in a jurisdiction allowing telephonic search warrants would have a harder time at a suppression hearing claiming that a warrantless search was needed to prevent the destruction of evidence. Stated differently, in a jurisdiction allowing telephonic search warrants, a court determining after the fact whether exigent circumstances were present for a warrantless search will be less likely to give weight to factors such as the delay in obtaining a traditional warrant and the difficulty of locating a judge.

Neither the Minnesota Rules of Criminal Procedure nor the statutes dealing with search warrants (see Minn.Stat. §§ 626.04–626.17) provide any guidance to police officers or courts in the issuance of telephonic search warrants. In this Minnesota is not unique. *See* R. Van Duizend, *The Search Warrant Process,* Chart I at 142–159 (Nat'l Center for State Courts 1985).

In 1980, this court decided two cases of great relevance: *State v. Andries,* 297 N.W.2d 124 (Minn.1980) and *State v. Meizo,* 297 N.W.2d 126 (Minn.1980). *Andries* involved a telephonic search warrant issued following the basic procedures set forth in Fed.R.Crim.P. 41(c)(2) for the issuance of telephonic search warrants in the federal system. In that case, the police officer had information a suspect believed to possess

marijuana soon would be leaving town. The county attorney called the closest judge who was 85 miles away and sought telephone authorization for a search warrant. A 3–way conference call between the judge, county attorney and police officer was recorded by both the deputy and the judge. The deputy signed the affidavit in the presence of a witness. The judge, after determining probable cause existed, delegated to the deputy the task of signing the judge's name to the warrant. 297 N.W.2d 126. A transcript of the conversation, the affidavit and the warrant were available at the omnibus hearing for use by the defendant in challenging the issuance of the warrant. *Id.* at 126. The court said: "We have no hesitancy in upholding the constitutionality of the procedures followed in this case" which were "remarkably similar" to the procedures established by the Federal Rules of Criminal Procedure 41(c)(2). 297 N.W.2d at 125. The court upheld the warrant issued notwithstanding the absence of any applicable rule or statute setting forth the procedures followed in this case and notwithstanding that the procedures used violated Minn.Stat. §§ 626.05 and 626.11 which specify that the issuing judge sign the warrant. We concluded by saying:

> In upholding the warrant issued in this case, we do not mean to sanction the indiscriminate use of such a procedure nor do we suggest that all telephone warrants, no matter what procedure is used, will be valid. In this case there was a demonstrated need for such a warrant, the procedures specified in the statute were substantially followed, and a record was made which was thereafter available for use by defendant in challenging the issuance of the warrant. Under these circumstances, we conclude that the search warrant was properly issued.

297 N.W.2d at 125–26.

In *State v. Meizo,* the written search warrant application was supplemented by oral sworn but unrecorded testimony given by the applicant in person to the magistrate. We upheld the warrant issued in part on the basis of the unrecorded testimony, saying:

> It is surely preferable for testimony to be recorded at the time of the probable cause determination by the magistrate, and every effort will presumably be made to this end. However, in accordance with the Fourth Amendment and its recognition of the peculiar demands and needs of the criminal justice system, there must be some flexibility in the warrant process. In this case it is clear, from sworn testimony in the record before us, that the magistrate had sufficient sworn testimony before him to properly find probable cause. Accordingly, the standards of the Fourth Amendment are satisfied and, thus, the evidence seized pursuant to the warrant was properly admitted at defendant's trial.

297 N.W.2d at 129. Concurring specially, Justice Todd said:

> I wish to emphasize the fact that it is not only preferable but most desirable that testimony be recorded at the time of the probable cause determination by the magistrate. The failure to do so can lead to situations where the magistrate may subsequently be called upon to give testimony on behalf of the prosecution to validate the nature of the proceedings. I regard this as not serving the best interests of the judicial system because it places the judicial branch of government as a witness of the executive branch of the government.

*Id.* at 129. Justice Wahl, in dissent, argued that some sort of recordation should be mandated. *Id.* at 129–30.

▮▮▮ Recordation ought to be generally required because it helps insure that there is a contemporaneous record to review and the failure to make a contemporaneous record of some sort can lead to the unfortunate situation where the issuing judge may subsequently be called upon at a suppression hearing to give testimony. The record in this case is not the kind of contemporaneous record that should have been made. However, we agree with the court of appeals' conclusion that the record supports

the trial court's determination that the affidavit prepared following the search accurately reflected the substance of the applicant's earlier statements of fact over the telephone and that those facts provided the issuing judge with a sufficient basis for determining that there was probable cause to search this apartment.

■ Although concluding that the record shows probable cause to search, the court of appeals concluded that the trial court should have suppressed the evidence on the ground that the application failed to establish a need for dispensing with the normal requirement that the application and affidavit be in writing. In *Andries*, we noted there was a demonstrated need for a telephonic search warrant as opposed to a traditional search warrant, thereby implying that an applicant for such a warrant should demonstrate need. 297 N.W.2d at 126. We believe that generally and in the absence of legislation or a rule to the contrary, a showing of need ought to be made as part of the telephonic search warrant application process. Fed.R.Crim.P. 41(c)(2)(A), *e.g.*, requires the applicant to demonstrate that "the circumstances make it reasonable to dispense with a written affidavit." Shortly following the adoption of the federal rule, the federal judicial administration formulated and distributed guidelines for applying the rule, including a guideline dealing with "Demonstrating Need for Dispensing With a Written Affidavit":

Criteria should be developed in each court to determine when and under what circumstances the telephonic procedure is acceptable. While conditions will vary from court to court, examples of such criteria could include the following:

(a) The agent cannot reach the magistrate in his office during regular court hours;

(b) The agent making the search is a significant distance from the magistrate;

(c) The factual situation is such that it would be unreasonable for a substitute agent, who is located near the magistrate, to present a written affidavit in person to the magistrate in lieu of proceeding with a telephonic application;

(d) The need for a search is such that without the telephonic procedure a search warrant could not be obtained and there would be a significant risk that evidence would be destroyed.

Memorandum of William E. Foley, Deputy Director, Administrative Offices of United States Courts (September 20, 1977), quoted at E. Marek, *Telephonic Search Warrants: A New Equation for Exigent Circumstances*, 27 Clev.St.L.Rev. 35, 41 nn. 30–31 (1978).

■ It does not follow, however, that a failure to demonstrate a need for such a warrant required the suppression of evidence seized in a search made pursuant to such a warrant. Fed.R.Crim.P. 41(c)(2)(G) expressly provides:

Absent a finding of bad faith, evidence obtained pursuant to a warrant issued under this paragraph is not subject to a motion to suppress on the ground that the circumstances were not such as to make it reasonable to dispense with a written affidavit.

As this rule recognizes, the question for the issuing judge, whether or not to issue a search warrant, is different from the question faced by a trial court at a pretrial suppression hearing, specifically, whether or not to suppress the evidence. As we made clear in *State v. Mitjans*, 408 N.W.2d 824, 830 (Minn.1987), whether or not to suppress evidence because police obtained the evidence in violation of a statute or rule is "quintessentially a judicial issue." In a number of cases, we have already made clear our judicial intent that a violation of a procedure such as that set forth in Fed. R.Crim.P. 41 will not necessarily result in the suppression of the evidence seized. In this we have followed the federal cases dealing with violations of the rule. This, in fact, is the approach that we have taken in deciding whether to suppress evidence seized in searches that, though constitutional, involve statutory violations. *See, e.g., State v. Smith*, 367 N.W.2d 497, 504–05 (Minn.1985) (refusing to suppress because violation was technical violation of

statute and "[t]here can be little doubt that a court order would have been issued on request"); *State v. Schinzing,* 342 N.W.2d 105, 108–09 (Minn.1983) (citing some of the other cases of this court to the same effect); *State v. Mollberg,* 310 Minn. 376, 386–87, 246 N.W.2d 463, 470 (1976) (stating that "[w]e fully agree with the approach adopted by the Federal courts" for violations of R. 41).

Under the facts in this case, we conclude that the trial court properly denied defendant's motion to suppress. The officer reasonably believed that there was a need for prompt entry, *i.e.,* entry before word got back to those inside that an arrest had been made. Instead of immediately returning to the scene for the purpose of making a warrantless entry, the officer engaged in a more careful, prudent course: the officer booked the arrestees, then asked an assistant county attorney for permission to apply for a telephonic search warrant.[2] Given the go-ahead, the officer—sitting in his unmarked car outside the apartment, where he could keep an eye on the situation and presumably react if necessary, began trying to contact a judge on his car telephone. Within 39 minutes of the arrests, he was talking to a judge and 31 minutes later obtained the issuing judge's approval and proceeded to make the entry. It seems to us that this is one of those fact situations in which the use of a telephonic search warrant makes sense.[3]

Clearly, any defects in this case were neither intentional nor deliberate. The applicant asked the issuing judge if he should record the conversation and the judge, apparently not familiar with the *Andries* case and with the preferred procedure for the issuance of telephonic search warrants, said the recordation was not necessary. Given these facts and the fact that a substantially contemporaneous record was made which makes it clear that a search warrant still would have issued if the preferred procedure had been followed, we believe that the court of appeals' conclusion that suppression was required is wrong under our caselaw.[4]

While we conclude that suppression was not required, we add that the flaws in the process in this case illustrate the need for action to insure that proper procedures are used in issuing telephonic search warrants. In the absence of any amendments to the statutes specifically regulating the issuance of telephonic search warrants or amendments to the Minnesota Rules of Criminal Procedure, we can only direct police officers, prosecutors and judges to the procedures set forth in Fed.R.Crim.P. 41(c)(2) and to those recommended by other commentators—*see e.g.,* R. Van Duizend, et al., *The Search Warrant Process* 85–87, 108–09 (Nat'l Center for State Courts

**2.** The Department of Justice not only has encouraged officers to "clear" their applications with prosecutors but has encouraged participation by prosecutors in the telephonic conferences. E. Marek. *Telephonic Search Warrants: A New Equation for Exigent Circumstances,* 27 Clev.St.L.Rev. 35, 41 (1978). The authors of a study of the search warrant process for the National Center of State Courts recommend the use, where practical, of a three-way conversation involving the officer, the prosecutor and the magistrate. "One danger of the telephonic procedure is that a necessary element might be inadvertently omitted and that this omission would not be detected until after the seizure had been made. Casting the application as a colloquy between the prosecutor and the officer limits the risk of inadvertent omissions and further helps to organize the materials for the magistrate." R. Van Duizend, *The Search Warrant Process* 109 Nat'l Center for State Courts (1985).

The authors also recommend that the affiant use a so-called "field sheet," which helps the applying officer and screening prosecutor organize the facts, list the items to be sought, and insure that all necessary information is presented. *Id.*

**3.** Another, of course, is the situation exemplified by *Andries,* where an applicant in an outstate community does not have access to a local judge but must travel many miles to obtain a warrant.

**4.** In view of this decision and in view of our conclusion that defendant's constitutional rights were not violated by the procedures used, we need not and do not address the state's contention that this court should follow the so-called good faith exception to the exclusionary rule adopted and applied by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) *See State v. McKloskey,* 453 N.W.2d 700, 701 n. 1 (Minn.1990).

1985). Police departments, assisted by prosecutors, also may consider adopting regulations to assist officers in following proper procedures when seeking telephonic search warrants. In this regard, see Professor LaFave's discussion of police rule-making in W. LaFave, *Constitutional Rules for Police: A Matter of Style,* 41 Syracuse L.Rev. 849, 865–871 (1990). We merely hold that given the facts and circumstances of this case, suppression of the evidence seized was not required. In a different case, of course, the result might be otherwise.

Reversed and judgment of conviction reinstated.

GARDEBRING, J., took no part in the consideration or decision of this case.

WAHL, Justice (dissenting).

I respectfully dissent. Only once before has this court considered the issuance of a search warrant applied for and authorized over the telephone. In *State v. Andries,* 297 N.W.2d 124 (Minn.1980), we affirmed the use of such a warrant which was authorized by a judge who fully complied with the requirements of the relevant statutes except that the judge did not personally sign the warrant but delegated that ministerial act to the applicant. We noted that the procedures followed in that case were remarkably similar to those established by the Federal Rule of Criminal Procedure that authorizes the use of telephonic warrants. *Id.* at 125 (citing with approval Fed. R.Crim.P. 41(c)(2))[1].

The federal rule, which the court looks to again today as a guide for our trial courts, provides numerous safeguards to ensure the proper issuance of a telephonic warrant. Under that rule: (1) the applicant must persuade the magistrate that the circumstances present a reasonable need to issue a warrant based on oral testimony; (2) the oral testimony must be recorded, (3) the applicant must prepare a written warrant and read it verbatim to the issuing magistrate who transcribes it, verbatim onto a duplicate warrant; (4) the transcript of the sworn oral testimony must be signed by the affiant in the presence of the magistrate and filed with the court.

Collectively, the requirements of Fed. R.Crim.P. 41(c)(2) serve to promote the accuracy of the probable cause determination and ensure the defendant a documented basis from which to challenge the sufficiency of the evidence. Those are the same objectives advanced by Minn.Stat. § 626.09 (1990) which requires that affidavits be in writing.

The majority notes the importance of the federal rule requirements, specifically the showing of "reasonable need" and the contemporaneous recording, but fails to find that the absence of any one of them supports invalidation of the warrant. I believe, however, that the cumulative harm created by the complete lack of adherence to any of the requirements must invalidate the warrant in this case.

We are presented with a case in which no precautions were taken to preserve the accuracy of the information supporting the warrant or to protect the defendant's right to challenge probable cause.[2] There was no demonstration of reasonable need, no contemporaneous recording, no written record of the facts supporting the determination of probable cause until after the warrant issued. As a result, there is no basis on which the defendant here may challenge probable cause at the time the warrant was issued. In my view the issuance of the warrant in this case not only violates Minn.Stat. § 626.09, but requires suppression of the evidence seized.[3]

In *Andries* we noted:

be recorded contemporaneously "so that the transcribed affidavit will provide an adequate basis for determining the sufficiency of the evidence if that issue should later arise."

---

1. The text of that rule is set forth by the majority at p. 860.

2. I am especially troubled by the lack of a contemporaneous recording here. This court has articulated its preference for recording oral evidence used as the basis for a probable cause determination. The Advisory Committee to Fed.R.Crim.P. 41 noted that the testimony must

3. I note that while Fed.R.Crim.P. 41(c)(2)(G) provides that, absent bad faith, a motion to suppress will not prevail on the ground that it

In upholding the warrant issued in this case, we do not mean to sanction the indiscriminate use of such a procedure nor do we suggest that all telephone warrants, no matter what procedure is used, will be valid.

Upholding the warrant in the instant case undermines our previously stated preference for adhering to the procedures contained in the Federal Rules, particularly the contemporaneous recording of oral testimony. It encourages the use of telephone warrants in a manner that does not afford the defendant a fair opportunity to challenge the accuracy of the basis for the probable cause determination. For those reasons, I would affirm the decision of the court of appeals.

TOMLJANOVICH, Justice (dissenting).

I disagree with the majority's conclusion that the evidence seized pursuant to the search warrant in question is admissible against respondent.

In *State v. Andries*, 297 N.W.2d 124 (Minn.1980), this court recognized that a search warrant obtained over the telephone violates Minn.Stat. § 626.05 (1990) and Minn.Stat. § 626.11 (1990) in that it does not bear the signature of the issuing magistrate. *See id* at 125. Nevertheless, the court concluded that because the warrant in *Andries* was issued in full compliance with all other relevant statutory requirements, because the magistrate's signature represented "a purely ministerial task," and because the warrant applicant demonstrated need for obtaining the warrant by telephone rather than in person, the warrant itself withstood challenge. *See id* at 125–26. In my opinion, the facts presented here are so substantially different as to require a different result.

In *Andries*, the nearest available judge was 85 miles away. The record before us here indicates Officer Hankee arrested Hill and Burch at 12:30 p.m. and then transported them to the Ramsey County Adult De-tention Center, placing him *directly across the street* from the county courthouse where he might have applied for a warrant *in person*. In *Andries*, the officer applying for a warrant, together with the county attorney, participated in a conference call during which he read a prepared application and affidavit to the issuing judge before signing the affidavit in the presence of a witness. Here, in sharp contrast, the officer called the judge from a car phone and alleged the existence of "exigent circumstances," without informing the judge about his previous trip to the county jail. Furthermore, entirely contrary to the situation in *Andries*, no contemporaneous record was created here. Instead, both the warrant application and supporting affidavit were completed after the fact. To suggest that such a procedure provides any protection from an unreasonable search is simply to deny reality.[1] These facts reflect a situation so different from that in *Andries* as to make the majority's reliance on that decision misplaced. I would hold that the state has not demonstrated the search in question was based upon probable cause and that the evidence seized during that search is inadmissible against respondent.

---

was not reasonable to dispense with a written affidavit, the implication of that provision is that all other forms of noncompliance with the statute do provide grounds for suppression.

1. I do not wish to join in the majority's speculation that the obvious defects at issue here "were neither intentional nor deliberate."