**STATE of Minnesota, CITY OF MINNEAPOLIS, Petitioner, Appellant,**

v.

**Jason Thomas COOK, et al., Jason Charles Meili, Peter Joseph Speilbaur, Respondents.**

**No. C0–92–411.**

Supreme Court of Minnesota.

March 19, 1993.

**18**

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert J. Alfton, Minneapolis City Atty., Brian Bennett Huling, Asst. Minneapolis City Atty., Minneapolis, for appellant.

Warren Sagstuen, Asst. Hennepin County Public Defender, Minneapolis, for Jason Thomas Cook, et al.

Michael F. Sullivan, Minneapolis, for Peter Joseph Speilbaur.

Jerry Strauss, Bernick & Lifson, Minneapolis, for Jason Charles Meili.

SIMONETT, Justice.

Under the facts of this case, the defects in the search warrant obtained by telephone require suppression of the evidence seized in the search. For the reasons stated, we affirm the court of appeals and the trial court.

At about 11 p.m. on Sunday, July 21, 1991, Minneapolis police officers responded to complaints of a noisy, unruly party at defendants' duplex in south Minneapolis. As Sgt. Michael Fossum approached the residence he could hear music from a block away. As he got closer he observed more than a dozen individuals drinking and shouting from the second floor deck of the duplex.

This was not the first time the police had received complaints about defendants' activities. In the 5 months preceding July 21, officers had been to the duplex dozens of times in response to more than 75 citizen complaints for noisy parties, loud fireworks, fights, and other disturbances. Typically, the officers were confronted with large parties involving live music and crowds of 100 or more people carousing. On July 2, 1991, there had been a mediation session attended by several of the defendants, a police department representative, some neighbors, and a city council member. At this session, defendants admitted having parties and selling alcohol as a money-making enterprise. Defendants promised not to have any more large parties and not to disturb neighbors. Within a week, the promises were broken. More than ten citizen complaints for loud parties were made in the 20 days between the mediation session and the evening in question.

On the occasions when the officers would respond to the complaints, they could see and hear the party going on but were refused entrance to the duplex. Because the residents would not consent to a police entry and the police were without a search warrant, the officers could not enter the duplex. Consequently, on the evening of July 21, Sgt. Fossum felt he would need a search warrant to enter the premises. The sergeant believed it would take 3 to 4 hours to obtain a written warrant in the regular manner, and, therefore, he decided to obtain a telephonic warrant. Two officers were assigned to watch the house, additional officers were summoned, and Sgt. Fossum then placed a telephone call to Judge H. Peter Albrecht.

After being placed under oath, Sgt. Fossum explained the situation to Judge Albrecht and described the police department's past experiences at the duplex. The officer testified that he specifically requested authority to search for and seize alcohol, dispensing equipment, cash boxes, curren-

cy, and other items evidencing sales of alcohol, and to identify the party's sponsors and make observations of the physical surroundings of the dwelling. Based on Sgt. Fossum's statements, the judge found probable cause and sufficient need for a search warrant. At 11:58 p.m. the judge, by telephone, authorized a search of the premises. This telephone conversation was not recorded. The officer did not read his statement from a prepared written application or from any notes, nor, apparently, did the judge make any significant notes of what was said over the telephone.

Sixteen minutes later, the officers approached the duplex. Seeing the officers coming, defendant Trevor Cook closed and locked the door. The officers announced their presence three times, stating they had a search warrant; and, when no one responded, they broke through the door with a sledge hammer. Once inside the duplex, the officers seized beer kegs, bar supplies, promotional banners, bottles of alcohol, fireworks, and a small amount of marijuana.

After completing the search, Sgt. Fossum went to precinct headquarters where the warrant application form was completed (including a two-page, single-spaced typed affidavit setting out the facts previously given the judge over the telephone), and the warrant itself was completed. The officer signed the application as the affiant and also signed the jurat with the phrase "for Judge H. Peter Albrecht." The officer also wrote on the warrant "for Judge H. Peter Albrecht," thereby indicating he had signed on the judge's behalf. A handwritten inventory of the items seized was also prepared and signed by Sgt. Fossum. The sergeant then returned to the duplex and left a copy of the search warrant and inventory. At 8 a.m. the morning of July 22, Judge Albrecht initialed and dated the search warrant, supporting affidavit, and inventory. The original copies of these documents were filed with the court.

All defendants were charged with misdemeanor counts for violation of the city ordinance against noisy parties, disorderly conduct under Minn.Stat. § 609.72, subd. 1(3) (1990), and fireworks in possession under Minn.Stat. § 624.21 (1990). Defendant Meili was further charged with the petty misdemeanor of possession of a small amount of marijuana under Minn.Stat. § 152.027, subd. 4 (1990).

Judge Charles Porter, the presiding trial judge, granted defendants' motion to suppress the evidence seized, ruling that the state had failed to show a reasonable need for obtaining a search warrant over the telephone. The trial court took judicial notice that the duplex was less than 10 miles from Judge Albrecht's home and at least six other judges resided even closer, so that there was time for an officer to have appeared personally before a judge with a written affidavit. The trial court further observed that given the nature of the evidence seized, there was no significant risk of it being destroyed before a written warrant could have been obtained. The court of appeals affirmed in an unpublished opinion. We granted the state's petition for further review in light of our recent decision in *State v. Lindsey*, 473 N.W.2d 857 (Minn.1991).

I.

In *State v. Lindsey, supra,* we reaffirmed our recognition of telephone search warrants, noting that we had first ratified their use in 1985 in *State v. Andries*, 297 N.W.2d 124 (Minn.1980). In both cases we cited Fed.R.Crim.P. 41(c)(2), and in *Lindsey* we quoted the rule in its entirety, indicating it was the procedure to be followed in obtaining a search warrant by telephone. In both cases we said, too, that a telephone search warrant should only be used when circumstances dictated a need to dispense with the more time-consuming process of obtaining a traditional warrant.

We will not again set out verbatim Fed. R.Crim.P. 41(c)(2). It is enough to say there are very specific procedures to be followed. For example, the magistrate must place under oath "each person whose testimony forms a basis of the application and each person applying for that warrant." A record must be made of the entire call after the caller has informed the

magistrate of his purpose in calling, preferably on a voice recording device, but if none is available, then a stenographic or longhand record should be made. The record is to be certified or signed, and filed with the court. The person requesting the warrant must prepare a document known as the duplicate original warrant in writing in advance of his or her conversation with the magistrate. This document is read to the magistrate verbatim and simultaneously entered verbatim by the magistrate on a similar document form called the original warrant. If the magistrate is then satisfied that it is reasonable to dispense with a written affidavit and that the warrant should issue, he or she should direct the caller to sign the magistrate's name to the duplicate original warrant, and the magistrate should sign the original warrant. The exact time of the execution of the warrant should be written on both the original warrant and the duplicate original.

The purpose of these procedures is to have a record made contemporaneously with the authorization of the search warrant that will show both probable cause for a search and a reasonable need for the warrant to be issued telephonically, so that later, if need be, there is a basis for challenging the warrant that is not dependent solely on after-the-fact recollections. *Lindsey*, 473 N.W.2d at 865 (Wahl, J., dissenting) (there should be a contemporaneous recording for there to be a probable cause challenge); *State v. Meizo*, 297 N.W.2d 126, 129 (Minn.1980) (Todd, J., concurring) (if no contemporaneous record, the judge might have to testify at a probable cause challenge, which would unseemly enlist the judicial branch as a witness for the executive branch). In addition, the federal rule procedures ensure that the police officers will actually have a warrant to carry with them and to display when they execute the search.

■ Even though a search warrant issued on an oral presentation to the judge may be constitutional, violation of the rules of procedure for obtaining the warrant may result in suppression of the evidence seized. *Lindsey*, 473 N.W.2d at 863 (citing

our decisions for the well-established proposition in this state that violation of a rule can result in exclusion of evidence). Procedural defects which are minor and relatively insignificant need not require suppression. On the other hand, serious violations which subvert the purpose of established procedures will justify suppression. The purpose of suppression is not to vindicate a defendant's rights nor to affirm the integrity of the courts, but to deter police from engaging in illegal searches. In other words, the risk of having seized evidence suppressed is intended to persuade police officers to follow the rules and to act lawfully when searching and seizing private property. *See* Bookspan, *Reworking the Warrant Requirement: Resuscitating the Fourth Amendment*, 44 Vand.L.Rev. 473, 483 (1991).

## II.

We turn now to this appeal. In *Lindsey* we held that "given the facts and circumstances of this case," suppression was not required. We then added, "In a different case, of course, the result might be otherwise." *Id.* at 865. *See also State v. Andries*, 297 N.W.2d 124, 125–26 (Minn.1980) ("nor do we suggest that all telephone warrants, no matter what procedure is used, will be valid").

■ There are two judicial concerns in connection with obtaining a search warrant by telephone: (1) Was there a demonstrated need for a telephone warrant in lieu of the traditional written application? and (2) Were the procedural requirements for obtaining a warrant by telephone duly followed?

■ As to the first requirement, the federal rule says summarily that the police officer should demonstrate that "the circumstances make it reasonable to dispense with a written affidavit." R. 41(c)(2)(A). In *Lindsey*, we pointed out that federal judicial administrators had issued separate guidelines entitled "Demonstrating Need for Dispensing With a Written Affidavit," listing some of the circumstances where a

telephone warrant would be justified.[1] In the case now before us, the trial judge, applying the federal guidelines quoted in *Lindsey*, determined that a demonstrated need for a telephone warrant *had not* been shown.

The state disagrees with the trial court determination, arguing that the need for a search warrant arose late on a Sunday night and that it would have taken 3 to 4 hours to have made a written application in a personal appearance before a judge, by which time the party might have been over. Some of the evidence (such as cash, price lists, etc.) was easily disposable, and, furthermore argues the state, the neighbors should not have to be "held hostage" by a raucous party continuing unabated for the extended time it would take to get a traditional warrant. On the other hand, defendants counter that Judge Albrecht lived "only * * * 10 minutes" from the duplex and six other judges lived even closer. Defendants say the officers should have thought it likely the party would continue into the wee hours; and, finally, some of the items seized were not easily disposable (beer kegs, bottles, etc.) and, anyway, there was no indication the defendants would have gotten rid of these items to avoid seizure. Everyone agrees, we might add, that the police had probable cause to search the duplex.

The need for a telephone warrant is not as strong in this case as it was in *Lindsey*, where the property sought to be seized was easily disposable cocaine and there was reason to believe the apartment occupants might at any moment be alerted to the police presence. Even so, as we said in *Lindsey*, "It does not follow, however, that a failure to demonstrate a need for such a warrant required the suppression of evidence seized * * *." *Id.* at 863.

At the time Sgt. Fossum made his telephone call, this court had not yet decided *Lindsey*. True, the court of appeals' opinion in that case had been published, and our *Andries* decision was available, but neither opinion prescribed with any specificity the applicable criteria to be applied by a police officer in making a judgment whether to dispense with traditional warrant procedures. Indeed, the court of appeals' opinion noted the lack of guidance provided police officers in this regard. *State v. Lindsey*, 460 N.W.2d 632, 635 (Minn.App.1990) (the telephonic warrant "is a novel procedure still ungoverned by guidelines"). If the purpose of suppression is to deter police officers from doing what they should not do, the officers should first have some guidance on what it is they should be doing. Consequently, we are not inclined to impose the drastic sanction of suppression in this case on the grounds that the officer should not have sought a warrant by telephone.

We next consider the manner in which the telephone warrant application was processed. In both *Andries* and the court of appeals' opinion in *Lindsey*, the court cited Fed.R.Crim.P. 41(c)(2) and the procedures therein contained with approval. In other words, the procedures to be followed, especially the requirement of a contemporaneous written record, were established and well known. In this case, it is evident that there was total noncompliance with the procedures which should have been followed, with the exception that Sgt. Fossum was placed under oath for his telephone conversation. We have allowed oral sworn but unrecorded testimony given by the appli-

---

1. [E]xamples of such criteria could include the following:

(a) The agent cannot reach the magistrate in his office during regular court hours;

(b) The agent making the search is a significant distance from the magistrate;

(c) The factual situation is such that it would be unreasonable for a substitute agent, who is located near the magistrate, to present a written affidavit in person to the magistrate in lieu of proceeding with a telephonic application;

(d) The need for a search is such that without the telephonic procedure a search warrant could not be obtained and there would be a significant risk that evidence would be destroyed.

*State v. Lindsey*, 473 N.W.2d 857, 863 (Minn. 1991), quoting Memorandum of William E. Foley, Deputy Director, Administrative Offices of United States Courts (September 20, 1977), quoted at E. Marek, *Telephonic Search Warrants: A New Equation for Exigent Circumstances*, 27 Clev.St.L.Rev. 35, 41 nn. 30–31 (1978).

cant in person to the judge to supplement a written search warrant application, *State v. Meizo*, 297 N.W.2d 126 (Minn.1980), but here there is no written documentation to supplement. There was no recording of the telephone conversation between the police officer and the judge. No notes of the conversation were made at the time by either party. Nor had the officer spoken from notes prepared in advance of his phone call. In other words, we have no record made at the time the warrant was authorized which can be challenged by the defendants. We are not questioning the truthfulness of the officer's recollections of what occurred. We are simply saying there is no way to question these recollections, and the purpose of the federal rule we follow is to provide a documentary basis for such questioning or, better yet, to obviate the need to question. Neither, we might add, did the officer here have a duplicate original of the warrant with him to take along on the search.

The state argues that the procedural deficiencies here are no more serious than in *Lindsey*, where we refused to suppress the seized property. We disagree. In *Lindsey*, the officer first called an assistant county attorney for advice. When he was finally able to locate a judge, he advised the judge he was prepared to tape record the conversation and was told it would not be necessary. Even so, the officer had prepared notes of his warrant application and, after being sworn, testified to the judge from these notes. *Lindsey*, 473 N.W.2d at 859. The officer used the same notes in typing up the warrant papers a few hours later. "Given these facts and the fact that a substantially contemporaneous record was made," we denied suppression of the seized evidence. *Id.* at 864.

In *Lindsey* we said that the contemporaneous recording was not what it should be, *id.* at 862, and the clear import of that decision was that in the future more compliance with announced procedures would be required. We request the Advisory Committee on Criminal Rules to prepare and submit for our consideration a rule covering the use of such means as

telephone, radio and facsimile transmission for search warrant applications. Until we have such a rule, the procedures set out in Fed.R.Crim.P. 41(c) should be followed, including the supplemental guidelines of *Demonstrating Need for Dispensing With a Written Affidavit* set out in footnote 1, *supra*.

Affirmed.