20254

The STATE, Respondent, v. Becket CHANDLER, Jr. a/k/a James Chandler, Appellant.

(226 S. E. (2d) 553)

*W. Newton Pough, Esq.,* of Orangeburg, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph R. Barker* and *Brian P. Gibbes, Asst. Attys. Gen.,* of Columbia, and *Norman E. Fogle, Sol.,* of Orangeburg, *for Respondent,*

July 9, 1976.

NESS, Justice:

Appellant was convicted of common law murder and sentenced to life imprisonment. He seeks reversal contending the evidence was insufficient to submit the charge to the jury and that certain evidence should have been ex-

cluded because it was obtained pursuant to an unlawful search and seizure. We affirm.

Earl St. Clair Parker, Jr., was shot twice in the head from a distance of 10-12 inches during the night of June 15, 1975. As a result of the gunshot wounds, Parker expired on June 28, 1975. The State relied upon circumstantial evidence to prove the appellant committed the murder.

Appellant argues that the circumstantial evidence was insufficient to submit the case to the jury and that he was entitled to a directed verdict of acquittal. In *State v. Wheeler,* 259 S. C. 571, 578, 193 S. E. (2d) 515, 518 (1972) we said:

"In deciding whether the court erred in not directing a verdict in favor of the appellants, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464."

Accordingly, our review of the evidence is limited to whether it is susceptible of a reasonable inference that could have convinced a jury, properly charged on the burden of proof and the law relative to circumstantial evidence, that appellant was the murderer.

Around 2:30 a. m. on June 15, 1975, a member of the Orangeburg Police Department was parked at a gasoline station in the downtown area of that city. Appellant walked past the policeman and headed toward a taxicab stand located about one thousand feet away. The

policeman lost view of the appellant, but within a few minutes he received a radio message to return to headquarters and proceeded in the direction of the taxicab stand.

When the policeman reached the taxi stand, appellant was summoning his assistance. The officer stopped and appellant, visibly upset, pointed to Parker who was bleeding profusely and was stretched unconscious in the street. The officer found two .22 caliber casings within a few feet of Parker; no other potential evidence was discovered and no one else was seen in the area.[1]

Appellant told the officer that he had walked to the taxi stand to catch a taxi to his former fiance's, a Miss Rush, apartment. Appellant fully cooperated with the policeman, accompanied him to the hospital and was released.

The following day the police questioned Miss Rush. She stated that her relationship with appellant was no longer amicable, that she had not expected him to visit her the previous night, and that appellant owned a .22 caliber pistol which he carried regularly. Also, she stated that during their courtship, appellant had visited at her apartment and frequently practiced shooting a .22 pistol from her sun porch. The officers found a number of .22 caliber casings which Miss Rush identified as having been fired by appellant with his pistol.

A ballistics expert compared the casings found at Miss Rush's apartment and those found next to the slain Parker. The expert testified that the strike markings matched and that the bullets that killed the deceased were fired from the same .22 caliber pistol that fired the bullets retrieved from Miss Rush's apartment.

Pursuant to an arrest warrant, the police arrested appellant. He maintained his innocence and denied owning a .22 caliber pistol. While the appellant was in jail, the police

---

[1] A Mr. Bradley, driver of a car which was directly in front of the policeman's, was the only other person seen in the vicinity. Bradley testified that he was innocent of any involvement in the crime.

obtained a search warrant for his apartment. They found several .22 caliber bullets secreted in an air vent.

The appellant testified that he did not own a .22 caliber pistol, that Miss Rush was fabricating much of her testimony, and that he did not kill Parker.

The evidence unquestionably placed the appellant at the scene of the crime when no one else was in the vicinity. Appellant was connected with the murder weapon and his denial of ownership of a .22 caliber pistol was controverted by the State's testimony, including Miss Rush's that appellant had told her he would falsify his testimony and deny ownership of the pistol.

We have attempted to summarize the most persuasive portions of the State's case. It was adequate to submit the case to the jury. For homicide cases with similar factual backgrounds, see *State v. McDowell,* S. C., 224 S. E. (2d) 889 (1976); *State v. Gerald,* 261 S. C. 392, 200 S. E. (2d) 243 (1973); *State v. Hackett,* 215 S. C. 434, 55 S. E. (2d) 696 (1949).

We find no merit in the other points raised by appellant, which require little discussion.

At oral argument the appellant's counsel admitted the search warrant was properly issued upon proof of probable cause. He objected to admission of the fruits of the search because (1) appellant was not served with a copy of the warrant and (2) the warrant was executed at nighttime although it authorized a search "in the daytime only."

When the officers searched appellant's apartment, he was confined in jail. They left a copy of the warrant at the apartment. Without citation of authority, appellant argues the officers were required to serve the appellant with a copy of the warrant. We are not aware of any requirement that the officers must seek out the absent owner of searched premises and serve a copy of the war-

rant. The controlling statute, S. C. Code 17-271 (1975 Cum. Supp.) does not impose any such requirement.[2]

Furthermore, the exclusionary rule is a judicially created tool designed to safeguard Fourth Amendment rights. *United States v. Calandra,* 414 U. S. 338, 94 S. Ct. 613, 38 L. Ed. (2d) 561 (1974). The core of the Fourth Amendment is the protection of privacy. *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. (2d) 564 (1971). In the instant case the search was issued pursuant to a lawfully issued warrant. Any invasion of privacy was inevitable. Therefore, application of the exclusionary rule would not be appropriate. In *State v. Sachs,* 264 S. C. 541, 566, 216 S. E. (2d) 501, 514 (1975) we observed:

"The exclusionary rule is harsh medicine. The jury is charged with the duty of searching for the truth to determine the innocence or guilt of the accused, within the appropriate legal standard. . . . Exclusion should be applied only where deterrence is clearly subserved."

The *Sachs* opinion pointed out that exclusion of evidence should be limited to violations of constitutional rights and not to statutory violations, at least where the appellant cannot demonstrate prejudice at trial resulting from the failure to follow statutory procedures. See *State v. Sachs, supra,* footnote 11.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, RHODES, and GREGORY, JJ., concur.

---

[2] S. C. Code § 17-272, 1975 Cum. Supp., not applicable to this case.