**STATE of Minnesota, Appellant,**

v.

**Robert Joseph JORDAN, Respondent.**

**No. A06–1445.**

Court of Appeals of Minnesota.

Jan. 30, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Thomas F. Murtha IV, Aitkin County Attorney, Aitkin County Courthouse, Aitkin, MN, for appellant.

Mark D. Nyvold, Special Assistant State Public Defender, St. Paul, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; RANDALL, Judge; and STONEBURNER, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's decision to exclude evidence seized by law enforcement pursuant to an invalid nighttime search warrant and subsequent dismissal of the complaint. Because we conclude that the search was a technical violation of the statute and not a constitutional violation due to the fact that respondent was not home when the warrant was executed, we conclude that the district court erred in applying the exclusionary rule to suppress the evidence seized during the search and that the error had a critical impact on the outcome of the case. We therefore reverse and remand for trial.

## FACTS

At 4:24 a.m. on December 11, 2004, based on previous controlled buys of methamphetamine, Mille Lacs County Sheriff's Office Investigator Jim Osowski presented

a search-warrant application to the district court seeking a nighttime search of the premises located at 27438 110th Street in Isle and the persons of respondent Robert Joseph Jordan and Julie Ann Jordan, who were identified as residents at that address. The application stated that a search outside the hours of 7:00 a.m. to 8:00 p.m. was necessary to prevent the loss of the objects of the search or to protect the searchers or the public because

> [a]t the time the controlled buys were done at Jordan's Isle residence Robert Jordan, and Julie Jordan, possessed the Methamphetamines. It is unknown when individuals subject to search specifically, Robert Jordan and Julie Jordan, are at the residence, therefore officers may have to execute this warrant after 8:00 p.m. when both individuals subject to search are at the residence. Additionally, many individuals unknown to law enforcement have been identified in the Jordan home during the course of the controlled buys. On one occasion 13 such individuals were present. Execution of the Search Warrant after 8:00 p.m. when Robert and Julie Jordan are home should filter out innocent individuals and protect the searchers by having less individuals to secure. In addition, your Affiant received additional current information after the hours of 9:00 p.m. By the time your Affiant learned this current and relevant information and prepared the search warrant, it was well after the hours of 8:00 P.M. Your Affiant believes that if service of this search warrant is delayed, large amounts of evidence will be lost through sales to individuals.

The district court issued a search warrant on the morning of December 11 that included a provision allowing for a nighttime search, stating "[t]he Court further finds that a nighttime search outside the hours of 7 a.m. and 8 p.m. is necessary to prevent the loss, destruction, removal of the objects of said search, or to protect the searchers or the public." Law enforcement executed the search warrant at approximately 6:00 a.m. on December 11. Although three people were present and asleep in the residence when the search took place, neither respondent nor Julie Jordan was there. As a result of the search, officers found methamphetamine, drug paraphernalia, surveillance cameras, police scanners, more than $1,000 in cash, and firearms. Respondent was subsequently charged with third-degree controlled-substance crime in violation of Minn.Stat. § 152.023, subd. 2(1) (2004).

Respondent moved to suppress the evidence seized during the search and to dismiss the complaint. Respondent argued that there was no probable cause to issue a search warrant that included a nighttime-entry clause and that the search-warrant application did not contain a sufficiently particularized reason to justify a nighttime entry.

The district court granted respondent's motion to suppress the evidence, determining that while there was sufficient probable cause to justify issuance of the search warrant, the application "did not contain a sufficiently particularized reason to justify a nighttime entry." The district court therefore concluded that because the nighttime search constituted a violation of a constitutional nature, the evidence seized during the search should be suppressed. As a result, the district court granted respondent's motion to dismiss, concluding that, absent the excluded evidence, there was "insufficient evidence to proceed." This appeals follows.

## ISSUE

Did the district court err in suppressing evidence obtained during the execution of

a nighttime search warrant held to be invalid under Minn.Stat. § 626.14 (2004), when respondent was not present at the time law enforcement executed the warrant?

## ANALYSIS

 "When reviewing pretrial orders on motions to suppress evidence, we independently review the facts and determine, as a matter of law, whether the district court erred in its ruling." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn.2006) (citing *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999)). "The district court's factual findings are reviewed under the clearly erroneous standard, but we review the district court's legal determinations de novo." *Id.* "In order to prevail in an appeal from a pretrial order, the state must show clearly and unequivocally that the district court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Jones*, 518 N.W.2d 67, 69 (Minn.App. 1994) (citing *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)), *review denied* (Minn. July 27, 1994). Respondent concedes critical impact in this case.

 "[T]he exclusionary rule is a judicially created tool designed to safeguard Fourth Amendment rights." *State v. Chandler*, 267 S.C. 138, 226 S.E.2d 553, 555 (1976) (citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). In *Mapp v. Ohio*, 367 U.S. 643, 645, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961), the United States Supreme Court held that the exclusionary rule applies to the States through the Fourteenth Amendment.

Minn.Stat. § 626.14 (2004) provides that a search warrant may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public. The search warrant shall state that it may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless a nighttime search outside those hours is authorized.

"Underlying the Minnesota statutory rule . . . is the belief that a nighttime search of a home involves a much greater intrusion upon privacy and is presumably more alarming than an ordinary daytime search of a home." *State v. Lien*, 265 N.W.2d 833, 839–40 (Minn.1978); *see also State v. Winchell*, 363 N.W.2d 747, 750 (Minn.1985) (stating that in adopting section 626.14 "[t]he legislature recognized that entry into a residence in the middle of the night is a greater invasion of residential privacy than entry during the daytime").

 Here, the state does not argue that the district court erred in determining that the warrant application did not contain sufficient facts to support a nighttime search. Instead, the state contends that the district court should not have suppressed the evidence obtained during the search pursuant to the invalid nighttime search warrant when respondent was not home when the search warrant was executed. Specifically, the state argues that the violation was statutory rather than constitutional in nature and, therefore, does not justify suppression of the evidence.

The distinction between a statutory and a constitutional violation was articulated by the Minnesota Supreme Court in *Lien*. In that case, an officer applied to the district court for a warrant to search the defendant and his residence for controlled substances and paraphernalia. 265 N.W.2d at 835–36. The application re-

quested a nighttime search "to prevent the loss, destruction or removal of the objects of the search because . . . it is unknown when the person described herein will be at the premises described herein." *Id.* at 836 (quotation marks omitted). The district court issued a search warrant authorizing a nighttime search. *Id.*

On the same day, at 8:50 p.m., officers stationed themselves outside the defendant's home in preparation for executing the warrant when the defendant returned home. *Id.* The officers observed a number of people entering and exiting the defendant's residence, and after observing a person fitting the description of the defendant enter the apartment shortly after 9:00 p.m., the officers approached the building. *Id.* The officers could not see into the apartment; but the front door was slightly open, and the officers pushed the door open and entered the apartment. *Id.* In the course of the search, the officers found marijuana and drug paraphernalia. *Id.* But the district court subsequently suppressed the evidence obtained during the search, concluding that the "affidavit in support of the application for a search warrant did not contain a sufficient factual showing to justify inclusion of [the] clause[ ] authorizing . . . nighttime execution of the warrant." *Id.*

On appeal, the Minnesota Supreme Court agreed "that the police did not make a sufficient showing to justify inclusion of the nighttime search clause." *Id.* at 840. But despite its determination that the application did not make a sufficient showing, the supreme court held that the evidence obtained during the search should not be suppressed. *Id.* The supreme court reasoned that the "police acted in good faith and that any error committed [wa]s attributable to the magistrate, who should have required the police to make a clearer showing of need before granting the night-

time search clause." *Id.* The supreme court recognized that while the general rule against nighttime searches may have a "constitutional dimension," the error in that case was a technical violation of the statute, not a constitutional violation. *Id.* at 839, 841. In support of its conclusion that there was no constitutional violation, the supreme court noted that (1) the warrant was executed at a reasonable hour when most people would still be awake; (2) the defendant had just returned home and was fully clothed; (3) there was considerable activity in the apartment; and (4) the defendant's door was partly open. *Id.* at 841. The supreme court thus concluded:

> In short, the intrusion was not the kind of nighttime intrusion—with people being roused out of bed and forced to stand by in their night clothes while the police conduct the search—that our statutory rule against nighttime execution of search warrants is primarily designed to prevent. Thus, while there was a technical violation of our statute, the violation was not of a constitutional nature, and therefore . . . does not require the exclusion of the evidence seized.

*Id.*

Here, the district court recognized and cited to the Minnesota Supreme Court's decision in *Lien,* stating:

> Even though the inclusion of the nighttime search clause was not supported by the information in the affidavit, it does not follow that evidence obtained pursuant to the warrant should be suppressed. The circumstances of the case dictate whether a violation should have this result. If the violation is merely technical, it does not have constitutional ramifications.

But the district court ultimately concluded that the facts here were distinguishable from *Lien.*

The district court noted that (1) the search warrant was executed between 5:27 a.m. and 6:00 a.m., roughly one hour to one and one-half hours before "daytime"; (2) all three people in the residence at the time the warrant was executed were asleep; and (3) there was no evidence to suggest that people were coming and going from the residence at the time of or just prior to the search, that there was activity in the residence, or that the door was open. Based on these facts, the district court concluded that the circumstances of the search amounted to a constitutional violation and, therefore, the evidence seized during the search should be suppressed.

We agree that the three individuals who were roused from their sleep in the early morning hours and forced to stand by idly as law-enforcement authorities searched the home have a legitimate argument that a violation of their constitutional rights occurred, and, consequently, that the evidence against them should be suppressed. But we draw a distinction between those individuals and respondent, who was absent when the warrant was executed. Because respondent was not present when the search took place, the *Lien* court's policy concern with individuals "being roused out of bed and forced to stand by in their night clothes while the police conduct [a] search" is not triggered.

A few courts have addressed the issue of whether one has a reasonable expectation of privacy in his home when that individual is not present so that the execution of an invalid nighttime search warrant amounts to a constitutional violation requiring suppression of any evidence seized.[1] For instance, in *State v. Iverson*, 187 N.W.2d 1, 11, 27 (N.D.1971), a search warrant was issued authorizing a search of defendant's vehicle and residence in daytime or nighttime after defendant had already been taken into custody. During the search, evidence was seized that was subsequently admitted at defendant's trial. *Iverson*, 187 N.W.2d at 11, 27.

Defendant argued, in part, that because the search violated North Dakota's night-

---

1. *See United States v. Searp*, 586 F.2d 1117, 1122, 1125 (6th Cir.1978) (holding evidence seized during execution of nighttime search warrant that violated Fed.R.Crim.P. 41(c)(1) should not be excluded where defendant was not present when the search of home took place because "there was neither a possibility of bad faith conduct on the part of the police, nor prejudice to the defendant," and "no substantial right of the defendant ha[d] been infringed"; therefore, the search was "reasonable" under the Fourth Amendment); *Gamble v. State*, 473 So.2d 1188, 1195–96 (Ala.Crim. App.1985) (holding that while "[a]n error … may have been committed with respect to the issuance" of a search warrant for defendant's car that was executed at night, suppression of the evidence seized was unnecessary because defendant "was not subjected to an abusive, arbitrary intrusion into his home in the middle of the night, but was already in custody and his vehicle under surveillance") (alteration in original) (quotation omitted); *Commonwealth v. Camperson*, 437 Pa.Super. 355, 650 A.2d 65, 67, 70–71 (1994) (holding suppression of evidence was not required for seizure of drugs conducted pursuant to potentially invalid nighttime search warrant, when defendant was in custody both when police obtained search warrant and when search of home was conducted at 10:30 p.m., because violation of the state's nighttime search rule, if any, was technical in nature and appellant was not disadvantaged thereby); *State v. Chandler* 267 S.C. 138, 226 S.E.2d 553 (1976) (holding evidence should not be suppressed when police searched defendant's home at nighttime while defendant was in jail, despite the fact that the search warrant authorized a search in the daytime only, because violation was statutory in nature). *But see Henry v. State*, 373 A.2d 575, 578 (Del.1977) (holding that evidence seized during search of defendant's home while defendant was in custody of the police should be suppressed because search warrant was issued in violation of state nighttime search statute).

time search statute,[2] the evidence seized pursuant to the warrant should not have been admitted into evidence. *d.* at 27. Although the North Dakota Supreme Court determined that the search warrant was issued and executed in violation of the statute, the court held that the right under the statute to be free from nighttime searches was a "statutory right rather than a constitutional right under the Fourth Amendment," and, therefore, exclusion of the evidence was not warranted. *Id.* at 32–33. The court reasoned that the purpose of the nighttime search statute was "to protect a person and not a place from the peculiar abrasiveness of official intrusions at such periods," and that defendant's

> privacy during the evening could not have been invaded by a search of his residence pursuant to a search warrant issued on affidavits that lacked the positive statement required by [the nighttime search statute], because he was incarcerated at the time of the search warrant pursuant to his lawful arrest.

*Id.* at 33. The North Dakota Supreme Court concluded that, due to defendant's absence, "the authorization of a nighttime search of [his] residence was harmless error," and, thus, "the items seized pursuant to the nighttime search of [the] residence were properly admitted in evidence at ... trial." *Id.*

The court in *Iverson* discussed *United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970), a federal case dealing with the issue of a nighttime search under Fed.R.Crim.P. 41(c), a rule containing language similar to North Dakota's nighttime search statute. 187 N.W.2d at 32–33. In *Ravich*, police

officers arrested defendants at approximately 6:30 p.m. in their motel room. 421 F.2d at 1199. The officers did not conduct a search of the motel rooms at that time but did post two policemen near the entrance. *Id.* Later that night, officers obtained warrants to search the motel rooms after presenting affidavits and sworn oral testimony, which the district court determined to be sufficient to establish probable cause. *Id.* at 1199–1200. At approximately 11:00 p.m., officers executed the search warrants, despite the fact that the warrants did not contain a direction that they could be executed at night. *Id.* at 1200.

Defendants subsequently moved to suppress the evidence seized, arguing that the search warrants did not comply with either Louisiana state law or Fed.R.Crim.P. 41(c) because they did not contain a direction that they would be executed at night and because "the moving affidavits were not 'positive' that the property constituting the object of the search was in the place to be searched." *Id.* But the Second Circuit Court of Appeals held that the evidence obtained during the search was lawfully seized, stating "that under the special circumstances of this case the defects in the warrant were not such as to require exclusion of the evidence seized under them." *Id.* at 1201. These special circumstances included the fact that the district court judge "must have known that the warrants might be executed at night" and the Second Circuit's determination that the affidavits and oral testimony met the probative standards for authorizing a nighttime search under rule 41(c). *Id.* But the

---

**2.** The statute provided that
> [t]he magistrate issuing a search warrant must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched.

> In that case he may insert a direction that it be served at any time of the day or night. *Iverson*, 187 N.W.2d at 32 (quoting N.D. Cent. Code § 29–29–10 that was superseded in 1980 by N.D. R.Crim. P. 41).

North Dakota Supreme Court, in interpreting *Ravich*, opined that

> the special circumstances must have also included the fact that Ravich and his companions were already in custody as the result of a lawful arrest; that the Fourth Amendment protects people, not places; *that there was no one in the motel rooms when the search was made;* and that the same result would have been obtained if the officers had delayed their search until daylight.

*Iverson*, 187 N.W.2d at 33 (emphasis added).

Our conclusion in this matter is consistent with the United States Supreme Court's recent decision in *Hudson v. Michigan*, —— U.S. ——, —— – ——, 126 S.Ct. 2159, 2163–64, 165 L.Ed.2d 56 (2006), where the Court held that a violation of the constitutionally based knock-and-announce rule (often viewed as an area of the law that is analogous to nighttime searches) did not require the suppression of all evidence obtained during the search. The *Hudson* Court expressed its caution when applying the exclusionary rule, noting that "[s]uppression of evidence . . . has always been [a] last resort," and thus concluded:

> In sum, the social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial—incomparably greater than the factors deterring warrantless entries when *Mapp* was decided. Resort to the massive remedy of suppressing evidence of guilt is unjustified.

*Id.* at 2163, 2168; *see also Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 2014, 141 L.Ed.2d 344 (1998) (stating the exclusionary rule should be applied only "where its deterrence benefits outweigh its substantial social costs") (quotation omitted).

### DECISION

Because we conclude that, with respect to respondent, the execution of the invalid nighttime search warrant at respondent's home when he was not present amounted to a statutory violation rather than a violation of respondent's constitutional rights, the district court erred in suppressing the evidence and dismissing the complaint. As a result, we reverse and remand for trial.

**Reversed and remanded.**