STATE of Minnesota, Respondent,

v.

Robert Joseph JORDAN, Appellant.

No. A06–1445.

Supreme Court of Minnesota.

Dec. 6, 2007.

Lori Swanson, Minnesota Attorney General, Saint Paul, MN, James P. Ratz, Aitkin County Attorney, Thomas J. Nolan, Jr., Assistant Aitkin County Attorney, Aitkin, MN, for Respondent.

Mark D. Nyvold, Special Assistant Public Defender, Saint Paul, MN, for Appellant.

## OPINION

HANSON, Justice.

This is a pretrial appeal from an order granting appellant Robert Joseph Jordan's motion to suppress evidence obtained from a nighttime search of his home. Jordan and his wife were not present at the time of the search but Jordan's pregnant daughter, her boyfriend, and a third individual were present and each was in bed. Based on evidence obtained during the search of his home, Jordan was charged with one count of third-degree possession of a controlled substance. The district court concluded that the warrant application lacked sufficient facts to justify a nighttime entry and the circumstances present at the time of entry resulted in a constitutional violation, requiring suppression of all evidence seized during the search. The court of appeals reversed, holding that, because Jordan was not present in the home at the time of the search, the violation was statutory, not constitutional, and suppression was not required. *State v. Jordan,* 726 N.W.2d 534, 541 (Minn.App.2007) *rev. granted* (Minn. Apr. 17, 2007). We reverse and reinstate the suppression order.

On December 11, 2004, at approximately 4:30 a.m., deputy sheriffs presented an application to a district court judge for a warrant to search Jordan's residence during the nighttime or daytime hours, and without having to knock and announce their presence. The judge found probable cause for the warrant application and also authorized a nighttime search outside the hours of 7 a.m. and 8 p.m., but did not authorize an unannounced entry. The state concedes that the application for the search warrant did not contain a sufficiently particularized reason to justify a nighttime entry.[1]

At approximately 6 a.m. the deputies executed the warrant. As the deputies

---

1. In *State v. Bourke,* we held that the application for a warrant to search at nighttime must be established at least by a reasonable suspicion. 718 N.W.2d 922, 929 (Minn.2006). Minnesota Statutes § 626.14 (2006) authorizes the issuance of a warrant for a nighttime

approached Jordan's residence they observed that there were no lights on inside the residence but there were several vehicles in the yard. The deputies knocked on the front door and, hearing nothing from the inside, entered the residence and announced themselves.[2] Inside the residence, the deputies observed one male sleeping on a sofa, and a female and male sleeping in a bed in a back bedroom. All three individuals were dressed in nightclothes. The female was Jordan's 20–year–old pregnant daughter, and the male sleeping with her was her boyfriend. According to the deputies' reports, Jordan's daughter and her boyfriend regularly resided in Jordan's home. The third individual apparently was a social guest, staying only for the night.

The deputies kicked open Jordan's locked bedroom door and found: $900 in cash; two surveillance cameras; two active police scanners; an active driveway alarm; a polished blue rock with cuts and marks from a razor or knife with white residue, which tested positive for methamphetamine; a digital scale; a spoon with crystal-like residue; two baggies containing a crystal-like substance, one of which tested positive for methamphetamine; empty baggies; a coffee grinder with white powdery residue, which tested positive for Ephedrine; and a box of Suphedrine cold pills.

The district court found that the search warrant had sufficient probable cause, but that the nighttime search authorization was not supported because the application did not provide "sufficiently particularized reason to justify a nighttime entry." The

court suppressed the seized evidence because "the circumstances present when the warrant was executed constituted a violation of a constitutional nature." The district court said: "the place searched was defendant's home and even though he was not present, the application of the exclusionary rule should be no different than it would if he had been there given the circumstances present in this case."

The court of appeals reversed, reasoning that because Jordan was not present when the search took place, policy concerns about individuals " 'being roused out of bed and forced to stand by in their night clothes while the police conduct a search,' " were not triggered as to Jordan. *Jordan,* 726 N.W.2d at 539 (quoting *State v. Lien,* 265 N.W.2d 833, 841 (Minn.1978)). The court of appeals concluded that "the execution of the invalid nighttime search warrant at respondent's home when he was not present amounted to a statutory violation rather than a violation of respondent's constitutional rights," and, as such, the district court erred in suppressing the evidence. *Id.* at 541. We granted review.

■ When reviewing pretrial orders on motions to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo. *State v. Bourke,* 718 N.W.2d 922, 927 (Minn.2006). Our review is informed by our decision in *State v. Jackson,* 742 N.W.2d 163, No. A05–247, 2007 WL 4261169 (Minn. Dec. 6, 2007), issued contemporaneously with this opinion. In *Jackson,* we held that police entry into the

search only where it "is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public."

**2.** Based on our review of the record, it is unclear whether the entry was forced. One

deputy wrote in his report that the door was unlocked; a second deputy wrote in his report that the door was locked but then testified that he was not sure; a third deputy wrote in his report that the door was locked.

defendant's home on December 11 at 9:25 p.m. to execute a search warrant with an invalid nighttime authorization, and with no knowledge that defendant had not yet entered a period of nighttime repose, required that the evidence seized in the search be suppressed, both because the entry subverted the basic purpose of the statute regulating nighttime searches and the entry violated the defendant's rights to be free from unreasonable searches and seizures under the United States and Minnesota Constitutions. *Jackson*, 742 N.W.2d at 174–75, 177–78, 179–80. The added feature to consider in Jordan's case, not present in *Jackson*, is whether Jordan's absence from the home during the search reduces the statutory or constitutional protections.

## I.

■■■ Jordan argues that deputies violated the statute that restricts the service of a search warrant during nighttime hours. That statute provides:

A search warrant may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public. The search warrant shall state that it may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless a nighttime search outside those hours is authorized.

Minn.Stat. § 626.14 (2006).[3] The state concedes that the statute was violated because the application for the warrant was insufficient to support a nighttime search. But the state argues, and the court of appeals agreed, that a violation of the statute does not require suppression. As we noted in *Jackson*, the test for whether suppression is required is whether the violation of the statute was a serious one that subverted the purpose of the statute. 742 N.W.2d at 168 (citing *State v. Cook*, 498 N.W.2d 17, 20 (Minn.1993)).

Applying our decision in *Jackson*, we note that the deputies entered Jordan's home during the period defined by statute as being nighttime and the deputies did not know whether Jordan or any other occupants of the home were sleeping, were engaged in particularly personal behavior which they were attempting to keep private, or were in their nightclothes. In fact, three occupants of the home—two residents and one social guest—were sleeping and were roused out in their nightclothes for the search. And there is evidence that the door by which police gained entry to the home was locked. Clearly, the door to Jordan's bedroom, which contained the challenged evidence, was locked.

As in *Jackson*, the deputies entered Jordan's home without any information about what was going on inside the home. They did not know whether Jordan was present and sleeping, whether Jordan was engaging in personal behavior he intended to keep private, or whether he was in his nightclothes. But, unlike *Jackson*, it turns

---

**3.** Congress has also recognized a similar policy against conducting searches in the night and has enacted a statute that provides:

A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is

probable cause to believe that grounds exist for the warrant and for its service at such time.

21 U.S.C. § 879 (2000). The Federal Rules of Criminal Procedure define "daytime" to mean the hours from 6 a.m. to 10 p.m. Fed. R.Crim.P. 41(a)(2)(B).

out that Jordan was not present. This raises the question of whether the statute was intended to protect the interest of a homeowner in the security of his home even when the homeowner is not present. Stated another way, is the purpose of the statute only to protect a homeowner from intrusion on his person or is it broader, to protect a homeowner's interest in maintaining a secure home, whether he is personally present or not?

█ We conclude that the purpose of the statute is to protect the broader interest of a homeowner in the security of his home, whether he is present or not. First, the statute does not mention the presence of the homeowner as a condition to the prohibition against an unauthorized nighttime search. If the legislature had intended to protect only the person of the homeowner, it could have said so more specifically. Second, one of the purposes of the statute is to regulate the conduct of police, "to prevent police intrusion into the personal and private activities of individuals in their homes at night unless the police articulate facts sufficient to support their intrusion." *Jackson*, 742 N.W.2d 163, 173. That purpose is served by prohibiting an unauthorized nighttime search, whether the homeowner is present or not.

█ Under *Jackson*, the critical inquiry is what the officers know at the time of entry. *Id.* at 173. If, as in *State v. Lien*, they know that they will not be intruding on a homeowner's period of repose, the evidence they obtain in an unauthorized nighttime search may be admissible. 265 N.W.2d 833 (Minn.1978). But, if they do not know whether they will be intruding on a homeowner's period of repose, the evidence should be suppressed. Here, in fact, the deputies actually believed that Jordan would be present. Their warrant application represented that a nighttime

search would offer the best chance to find him present. The deputies did not learn of Jordan's absence until after they entered the home in violation of the statute. If the purpose of the statute is to deter unauthorized nighttime searches, then the after-the-fact knowledge that the homeowner is not present should be irrelevant in determining whether the purpose of the statute was subverted, especially when members of the homeowner's family and social guests are present.

We interpret the statute to protect an absent homeowner's interest in safeguarding his family and social guests against unauthorized nighttime police intrusions. Although we need not define the outer boundary of the protected interest, we conclude that it includes a homeowner's interest in safeguarding against unauthorized intrusion of a home that is occupied by resident members of his family and social guests. Accordingly, we hold that admitting the evidence seized from Jordan's home would subvert the basic purpose of section 626.14 and that suppression is required.

## II.

█ Even if suppression were not required under the statute alone, Jordan urges us to conclude that, under the present facts, the statutory violation reaches constitutional dimensions. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Minnesota Constitution has identical language. Minn. Const. art. I, § 10.

■ In *Jackson*, we addressed the question left open in *Lien*, when does a violation of the statute also become a constitutional violation? *Jackson*, 742 N.W.2d at 174. We concluded that a "search of a home at night is a factor to be considered in determining whether a search is reasonable under the Fourth Amendment"; that it is appropriate to define the privacy interest in a home by using the concept of a "period of nighttime repose"; and that entry into a home at 9:25 p.m. on December 11, when it had been dark for several hours, was within the period of nighttime repose. *Jackson*, 742 N.W.2d at 177.

Coincidentally, the police entry of Jordan's home was also on December 11, a year later than the entry into Jackson's home. The entry into Jordan's home occurred at approximately 6 a.m., which was at a time when it had been dark for hours, and would remain so for at least another hour. We conclude that the police entry into Jordan's home was during the period of nighttime repose, as defined in *Jackson*.

The state argues that Jordan's individual privacy rights have not been violated because there was no risk that he would personally be roused out of bed. The state necessarily emphasizes Jordan's constitutional right to be secure in his "person" against an unreasonable search or seizure. But the constitutional interest to be protected also includes Jordan's right to be secure in his "house" against an unreasonable search or seizure. U.S. Const. amend. IV. Jordan argues that this right exists whether he was present or not, because of his reasonable expectation that his house will be secure from illegal entry when it is occupied by members of his family and social guests.

■ We have not previously addressed the scope of the constitutional right of a homeowner to be secure in his house against an unreasonable search or seizure. Whether that right is broader than a homeowner's right to be secure in his person, and may exist even when his person is not intruded on, depends on whether a homeowner's reasonable expectation of privacy in his home is greater than the expectation to be secure in his person. In this connection, it seems clear that a homeowner cannot assert vicariously the individual rights of the other occupants of the home to be free from invasion of their persons. Thus, Jordan cannot object to the search on the grounds that the constitutional rights of the occupants to be secure in their persons has been violated. We have said that "the Fourth Amendment's protection is personal and individual," and "[a] defendant who cannot demonstrate a legitimate expectation of privacy relating to the area searched or the item seized will not have standing to contest the legality of the search or seizure." *State v. Richards*, 552 N.W.2d 197, 204 (Minn. 1996). Stated another way, Jordan does not have standing to object to the search on the basis of the invasion of the individual rights of his occupants to be secure in their persons.

■ But Jordan's individual right to be secure in his house may include the right to provide a secure place, free from unauthorized intrusion, for his family and guests. Clearly, Jordan has standing to assert such a right because he is the owner of the house and was the target of the search. *See, e.g., Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) (reinforcing the particularized harm requirement for standing). Thus, the inquiry is not one of "standing," but

whether the disputed search has infringed on the privacy interest of a homeowner that the Fourth Amendment was designed to protect. *See State v. McBride,* 666 N.W.2d 351, 360 (Minn.2003); *see also Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (stating that the Fourth Amendment rights "are personal" and "more properly placed within the purview of substantive Fourth Amendment law than within that of standing").

■■■ Determining the scope of a person's protected privacy interest involves a two-step inquiry: (1) what was the defendant's subjective expectation of privacy in the home; and (2) was that subjective expectation reasonable, i.e., one that is recognized by society. *See In re Welfare of B.R.K.,* 658 N.W.2d 565, 571 (Minn.2003); *see also Rakas,* 439 U.S. at 143–44 n. 12, 99 S.Ct. 421 (stating that to be legitimate, the expectation of privacy must be one that society is prepared to recognize as "reasonable"). Jordan has the burden of establishing that the challenged search violated his reasonable expectation of privacy. *State v. Gail,* 713 N.W.2d 851, 859 (Minn. 2006).

The court of appeals relied on five cases to support its conclusion that a homeowner does not have a reasonable expectation of privacy in his home during a period of nighttime repose when he is not present. *Jordan,* 726 N.W.2d at 539–41. But those cases are distinguishable because they only focus on a defendant's right of privacy in his person and in each the police actually knew that the suspect would not be present when they entered (either because the suspect was in custody or police knew that the suspect was elsewhere). *See United States v. Searp,* 586 F.2d 1117, 1119 (6th Cir.1978); *Gamble v. State,* 473 So.2d 1188, 1195 (Ala.Crim.App.1985); *State v. Iverson,* 187 N.W.2d 1, 33 (N.D.

1971); *Commonwealth v. Camperson,* 437 Pa.Super. 355, 650 A.2d 65, 71 (1994); *State v. Chandler,* 267 S.C. 138, 226 S.E.2d 553, 555 (1976). Those cases are more analogous to *Lien* because the police knew before the entry that they would not intrude on the defendant's expectation of privacy in his person during the night. They do not address a homeowner's privacy interest in safeguarding his family and guests, or his papers and effects, from illegal entry during the period of nighttime repose.

Jordan argues that his absence from the home is not relevant to the constitutional analysis because a homeowner's expectation of privacy is greater than just the risk of being personally roused out of bed and includes an interest in safeguarding his family, guests, papers, and effects from an illegal entry. Although Jordan cannot cite to any direct authority for that argument, the argument does find indirect support from a review of decisions in partially analogous situations.

■■■ First, in cases where the search is illegal because the police have no warrant and no probable cause, we have held that the search violated the defendant's reasonable expectation of privacy even though the defendant was not present during the search. *See, e.g., State v. Carter,* 697 N.W.2d 199, 210–11 (Minn.2005) (holding that a tenant has an expectation of privacy in a self-storage unit and suppressing evidence seized in the search without requiring that the defendant be present at the time of the search); *State v. Lemieux,* 726 N.W.2d 783, 787, 790 (Minn.2007) (holding that the warrantless search was legal because it was justified by the emergency-aid exception, but assuming that the defendant had a reasonable expectation of privacy in "his own abode" despite the fact he was

not present during the search).[4] Similarly, where a seizure pursuant to a warrant is illegal because the item seized does not bear a reasonable relationship to the items described in the warrant, the seized item is properly suppressed even if the defendant was not present during the search. *State v. Pietraszewski*, 285 Minn. 212, 218, 172 N.W.2d 758, 763 (1969).

To the degree that a nighttime search under a warrant with an invalid nighttime clause can be compared to a warrantless search or the seizure of an item not adequately described in a warrant, these cases support the conclusion that the search of Jordan's home violated his reasonable expectation of privacy. At the very least, these cases presume that the scope of the defendant's expectation of privacy is broader than merely the risk of the intrusion on his person.

Second, the Supreme Court has recognized that a homeowner's rights against unreasonable searches and seizures in his home may be violated even where the homeowner was not present. In *Alderman v. United States*, the Supreme Court said that electronic surveillance of a defendant's home violated the defendant's Fourth Amendment rights against unreasonable searches and seizures. 394 U.S. 165, 176, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The Court said: "Such [a] violation would occur if the United States unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations." *Id.* The Court also said:

> If the police make an unwarranted search of a house and seize tangible property belonging to third parties * * * the homeowner may object to its use against him, not because he had any interest in the seized items as "effects" protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house.

*Id.* at 176–77, 89 S.Ct. 961.

Third, Supreme Court decisions recognize that social guests have an expectation of privacy in the home of another. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (recognizing that "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable to society"). We have held that even a short-term social guest has a reasonable expectation of privacy in his host's home, because entering another person's home for a short-term social visit is a longstanding social custom that serves functions recognized as valuable by society. *B.R.K.*, 658 N.W.2d at 576, 578. Although a homeowner may not vicariously rely on the guests' individual rights, the existence of those rights reinforces the expectation of the homeowner that he can

4. *See also United States v. Wilcox*, 357 F.Supp. 514, 517–18 (E.D.Pa.1973) (concluding that the defendant had standing to complain of a warrantless search of his wife's apartment, although he was not present, because the search was directed at him and the defendant had sufficient interests in the premises—he had the key and regularly visited his children); *People v. Curtis*, 959 P.2d 434, 437 (Colo.1998) (stating that a defendant need not be present at the time of a warrantless intrusion of a third party's residence to assert standing, if he can "demonstrate[ ] a sufficient connection to the areas searched or the items seized"); *Hanna v. State*, 591 A.2d 158, 164 (Del.1991) ("We do not find persuasive the State's contention that because Hanna was not present at the trailer when the search took place, he is not entitled to contest the search and invoke the protection which the Delaware statute affords. * * * [W]e do not find the distinction meaningful because the central concern in both the constitutional and statutory contexts is the protection of the sanctity of the place of residence against unlawful invasion.").

safeguard his family and guests from illegal intrusion in his home.

Fourth, although the Supreme Court has not specifically determined whether a violation of a nighttime search statute reaches a constitutional dimension,[5] it has recognized a particular concern with nighttime searches. *See generally Coolidge v. New Hampshire,* 403 U.S. 443, 477, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (noting that a seizure of a person during the night is an "extremely serious intrusion"); *Monroe v. Pape,* 365 U.S. 167, 210, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting) (stating that "[s]earches of the dwelling house were the special object of this universal condemnation of official intrusion" and "[n]ight-time search was the evil in its most obnoxious form"), *overruled on other grounds by Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958) ("[I]t is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home."). The Hawaii Supreme Court has said that "nighttime searches, particularly of individuals' residences, are generally considered to be anathemas by our society," recognizing that even when the nighttime search is made pursuant to a judicially issued search warrant, they are considered "particularly abrasive." *State v. Richardson,* 80 Hawai'i 1, 904 P.2d 886, 889 (1995) (citing *State v. Kalai,* 56 Haw. 366, 537 P.2d 8, 13 (1975)).

Combining these indirect authorities, we conclude that, under the Fourth Amendment, Jordan had a reasonable expectation as a homeowner that his person, house, papers, and effects would be secure against an unauthorized nighttime search and seizure, even though he was not present during the search, where the search occurred during a period of nighttime repose and members of his family and a social guest were present in the home. Because we conclude that the search and seizure violated the Fourth Amendment of the United States Constitution, we need not reach Jordan's argument based on the Minnesota Constitution.

■■■ Having concluded that the deputies violated Jordan's Fourth Amendment rights against unreasonable searches and seizures, we must next determine whether the evidence against him should be suppressed. We answered this question in the affirmative in *Jackson* and we likewise hold here that the evidence seized during the nighttime search of Jordan's home must be suppressed. *Jackson,* 742 N.W.2d at 180.

Reversed.

MEYER, Justice (concurring).

Even if the search and seizure does not violate the Fourth Amendment of the United States Constitution, I would conclude that there is a violation of our state constitution. *See Kahn v. Griffin,* 701 N.W.2d 815, 827–28 & n. 6 (Minn.2005) (stating that we have and can independently interpret and apply the state constitution on issues of search and seizure). We have recognized that there is a greater intrusion upon an individual's privacy when a nighttime search is executed. In

---

**5.** In *Gooding v. United States,* the issue of what showing, based on federal statutes, was necessary for a nighttime search was before the Court. 416 U.S. 430, 454–55, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974). The Court concluded, based on a statutory analysis, that no special showing was necessary other than a showing that contraband is likely to be on the property or the person to be searched. *Id.* at 458, 94 S.Ct. 1780. The Court's holding is not controlling because it was based on statutory construction, not a constitutional interpretation.

*State v. Lien,* we said that "a nighttime search of a home involves a much greater intrusion upon privacy and is presumably more alarming than an ordinary daytime search of a home." 265 N.W.2d 833, 839–40 (Minn.1978). In *State v. Bourke,* we determined that the affidavit for a search warrant during the night must show both probable cause for the search and at least reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer safety. 718 N.W.2d 922, 926–27 (Minn.2006).

Further, we have frequently recognized that privacy rights are more broadly defined under the Minnesota Constitution than under the United States Constitution. *See, e.g., State v. Carter,* 697 N.W.2d 199, 210–11 (Minn.2005) (holding that a person's expectation of privacy in a self-storage unit is greater for the purpose of the Minnesota Constitution than under the Fourth Amendment because "the dominant purpose for such a unit is to store personal effects in a fixed location"); *State v. Askerooth,* 681 N.W.2d 353, 363 (Minn. 2004) (holding that the Minnesota Constitution provides greater protection against searches and seizures during automobile stops); *State v. Fort,* 660 N.W.2d 415, 418–19 (Minn.2003) (holding that the Minnesota Constitution prohibits the expansion of a traffic stop beyond the original justification without reasonable suspicion of further criminal activity); *Ascher v. Comm'r of Pub. Safety,* 519 N.W.2d 183, 187 (Minn. 1994) (holding that the Minnesota Constitution provides greater protection against warrantless searches and seizures in sobriety check points); *In re Welfare of E.D.J.,* 502 N.W.2d 779, 780 (Minn.1993) (holding that the Minnesota Constitution provides greater protection against warrantless seizures of the person).

I would interpret the word "unreasonable" in the Minnesota Constitution to include, in addition to a warrantless search without probable cause, searches conducted during the nighttime without reasonable suspicion to support the need for a nighttime search. Minn. Const. art. I, § 10. And I would interpret the word "house" in the Minnesota Constitution to expand a homeowner's reasonable expectation of privacy to include, in addition to privacy in his person, privacy to safeguard his home from unauthorized intrusion on his family and social guests. *Id.*

PAGE, Justice (concurring).

I join in the concurrence of Justice Meyer.

ANDERSON, G. BARRY, J. (dissenting).

I respectfully dissent for many of the same reasons articulated in my dissent in *State v. Jackson,* 742 N.W.2d 163, No. A05–247 (Minn. Dec. 6, 2007). The majority concludes that suppression is required under Minn.Stat. § 626.14 (2006) and the United States Constitution. I conclude that the technical statutory violation at issue in this case does not warrant suppression under section 626.14 and does not implicate the Fourth Amendment.

I.

It is well established that even absent a breach of a defendant's constitutional rights, the violation of procedural rules may result in the suppression of evidence. *State v. Cook,* 498 N.W.2d 17, 20 (Minn. 1993) (citing *State v. Lindsey,* 473 N.W.2d 857, 863 (Minn.1991)). But, only "serious violations which subvert the purpose of established procedures" justify suppression. *Id.* Suppression is not required for "[p]rocedural defects which are minor and relatively insignificant," *id.,* or for statutory violations that are merely "technical" in nature, *State v. Lien,* 265 N.W.2d 833, 841

(Minn.1978). *See also State v. Goodwin,* 686 N.W.2d 40, 44 (Minn.App.2004) (execution of a daytime warrant less than two minutes outside the daytime period is a de minimis statutory violation that does not justify suppression), *rev. denied* (Minn. Dec. 14, 2004).

In our paradigm nighttime search case of *State v. Lien,* the police obtained a search warrant authorizing a nighttime search despite failing to make a particularized showing that a nighttime search was necessary either to preserve evidence or to protect the safety of the officers executing the warrant. 265 N.W.2d at 836. After observing the defendant enter his home and several other people enter and leave his home, the officers executed the warrant shortly after 9 p.m. *Id.* The officers could not see inside the home because the curtains were down, but they entered the slightly open door and conducted a search, finding and seizing illegal drugs and other evidence. *Id.* Although we concluded that a nighttime search should not have been authorized, we held that the evidence obtained in the search was admissible. *Id.* at 840–41.

Our decision not to suppress the evidence in *Lien* was based on our conclusion that the error, rather than being constitutional in nature, was a mere "statutory violation which under the circumstances does not mandate exclusion of the evidence seized." *Id.* at 835, 841. In support of this conclusion, we noted that "the intrusion was not the kind of nighttime intrusion—with people being roused out of bed and forced to stand by in their night clothes while the police conduct the search—that our statutory rule against nighttime execution of search warrants is primarily designed to prevent." *Id.* at 841.

It was significant that the warrant "was executed at a reasonable hour when most people are still awake," and we emphasized that the error was committed by the magistrate and that the police acted in "good faith." *Id.* at 840, 841.

The rationale of *Lien* controls this case. Jordan was not inconvenienced, significantly or otherwise, because he was not present in his home at the time of the search.[1] Furthermore, Jordan's absence renders the time at which the warrant was executed irrelevant in this case. (If the time of execution were relevant, 6 a.m. is at least arguably a reasonable time for the warrant to be executed. See Fed. R.Crim.P. 41(a)(2)(B), which defines [d]aytime hours for the purpose of executing search warrants as 6 a.m. to 10 p.m.) Finally, as in *Lien,* the error here was attributable to the judge, who determined that the information contained in the officer's affidavit justified inclusion of a nighttime entry provision in the warrant, rather than to the police.

Unlike the majority, I do not consider the fact that the police did not know that Jordan was absent from the premises to be relevant. The *Lien* court made an objective inquiry, considering all of the relevant facts and circumstances concerning the effect of the unlawful nighttime search on the occupant. *See* 265 N.W.2d at 841. What the majority dismisses as after-the-fact knowledge is simply the result of a fact-specific examination of the circumstances of the case. Our inquiry should concern the effect of the unlawful nighttime search on the defendant, regardless of when the police became aware of specific facts.

1. The evidence was suppressed against Jordan's guests because they "were roused from their sleep in the early morning hours and forced to stand by idly as law-enforcement authorities searched the home." *State v. Jordan,* 726 N.W.2d 534, 539 (Minn.App.2007).

To reach its conclusion that the statutory violation requires suppression, the majority describes the purpose of section 626.14 as "protect[ing] the broader interest of a homeowner in the security of his home, whether he is present or not." This description of the statute's purpose represents an expansion of our case law, as we have never described the purpose of section 626.14 so broadly. Previously, we have described the purpose of section 626.14 as simply the protection of individuals from the invasion of their privacy and from the inconvenience and discomfort occasioned by nighttime searches. *See State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (describing the purpose of the statute as "protect[ing] the public from the abrasiveness of official intrusions during the night") (internal quotations omitted); *Lien*, 265 N.W.2d at 839–40, 841 (stating that [u]nderlying the Minnesota statutory rule * * * is the belief that a nighttime search of a home involves a much greater intrusion upon privacy and is presumably more alarming than an ordinary daytime search of a home and explaining that the statute was primarily designed to prevent intrusions where people are roused out of bed and forced to stand by in their night clothes).

The majority's justification for its broad definition of the statute's purpose is unpersuasive. First, the majority's observation that "the statute does not mention the presence of the homeowner" is irrelevant, for "we decline to read into the statute a provision the legislature 'purposely omits or inadvertently overlooks.'" *Metro. Sports Facilities Commn. v. County of Hennepin*, 561 N.W.2d 513, 516–17 (Minn. 1997) (quoting *Green Giant Co. v. Commr. of Revenue*, 534 N.W.2d 710, 712 (Minn. 1995)). Second, the majority's claim that its broad definition serves the statutes purpose of regulat[ing] the conduct of police is doubtful, because the officers in this case obtained a warrant authorizing the nighttime search. As we stated in *Lien*, "Little more can be expected of a police officer who gathers evidence, presents it to a magistrate, and receives a warrant." 265 N.W.2d at 840 n. 1 (citing *Stone v. Powell*, 428 U.S. 465, 496, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring)).

Because the invalid execution of the warrant constituted a mere technical violation of section 626.14 and did not subvert the purpose of the statute, suppression of the evidence is not required.

## II.

The majority also concludes that the search violated Jordan's Fourth Amendment rights and that suppression is thus required under the United States Constitution. Here, as in *Jackson*, it is unclear to me why the majority addresses the constitutional issue after concluding that the statutory violation warrants suppression. We avoid constitutional analysis if an issue can be decided without reaching a constitutional question. *See Bourke*, 718 N.W.2d at 926; *In re Senty–Haugen*, 583 N.W.2d 266, 269 n. 3 (Minn.1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise."). The majority offers no justification for deciding to address Jordan's Fourth Amendment claim.

Because I do not believe that the statutory violation requires suppression, it is necessary for me to address Jordan's claim under the Fourth Amendment. I would dismiss Jordan's constitutional argument on the basis of *Lien*, where we stated that the error of conducting an improperly authorized nighttime search under section 626.14 in that case was not of a "constitutional nature." 265 N.W.2d at 841. We concluded in *Lien* that the execution of the

warrant did not violate the defendant's Fourth Amendment rights because the warrant was executed at a reasonable hour and the search did not entail rousing people out of bed and making them stand by in their night clothes while the search was conducted. *Id.*

Indeed, because Jordan was not present during the search, the constitutional challenge here is weaker than the claim we faced in *Lien,* where Lien was present. When considering whether a defendant can bring a claim asserting an infringement of his or her Fourth Amendment rights, we focus on whether the search at issue violated an interest of the defendant that was intended to be protected by the Fourth Amendment. *State v. Gail,* 713 N.W.2d 851, 859 (Minn.2006). Because [t]he Fourth Amendment protects people, not places, *In re Welfare of B.R.K.,* 658 N.W.2d 565, 571 (Minn.2003) (quoting *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)), Jordan " 'has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search,' " *Gail,* 713 N.W.2d at 859 (quoting *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Put most simply, Jordan's absence from the home meant, under these facts, that he had no interest protected by the Fourth Amendment that was violated by the search.

We recognized in *Jackson* that "the Supreme Court has never held that a nighttime search implicates the reasonableness requirement of the Fourth Amendment." 742 N.W.2d at 175. The Supreme Court's ruling in *Gooding v. United States* suggests that the time of day a search occurs does not have constitutional implications. 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974). In *Gooding,* the Court held that the federal statute governing searches for controlled substances does not require a

special showing for a nighttime execution of a search warrant. *Id.* at 458, 94 S.Ct. 1780. Although the Court resolved the case on statutory grounds and did not specifically address the Fourth Amendment issue, *Gooding* has been interpreted as suggesting that the fact that a search occurs during the night does not implicate specific Fourth Amendment concerns. *See State v. Seyferth,* 134 Wis.2d 354, 397 N.W.2d 666, 668 (1986) (The [*Gooding*] majority's failure to acknowledge that, despite the limited nature of the issue in the case before it, the subject area has significant constitutional ramifications strongly suggests hostility toward the proposition that fourth amendment reasonableness might address the timing of searches, including those conducted pursuant to warrants. (quoting George E. Dix, *Means of Executing Search and Seizures as Fourth Amendment Issues,* 67 Minn. L.Rev. 89, 105 (1982))).

The court of appeals relied on a number of decisions from other jurisdictions in concluding that Jordan did not have a reasonable expectation of privacy in his home at the time of the search. *State v. Jordan,* 726 N.W.2d 534, 539–41 (Minn.App.2007). The majority attempts to distinguish this authority on the basis that in those cases "the police actually knew that the suspect would not be present." In evaluating whether Jordan's Fourth Amendment rights were violated, however, it is the effect of the search on Jordan that we must consider, not what the police knew at the time they executed the warrant. It is irrelevant whether certain facts became apparent before or after the search.

The majority's definition of the right at issue is also a concern. The majority sweepingly declares that a homeowner has a right to be free from unauthorized nighttime searches where family and friends

are present in the home but the home-owner is not. As in *Jackson*, the majority ignores the fact that the nighttime search of Jordan's home was actually authorized by a warrant. The majority attempts to bypass this problem by citing to *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), which establishes that a homeowners Fourth Amendment rights may be violated where he or she is not present at the time the search occurs. But *Alderman* involved *warrantless* electronic surveillance, not an improperly authorized nighttime search clause in a warrant supported by probable cause.[2] Furthermore, the cases relied on by the majority in which we have identified a Fourth Amendment violation despite the absence of the defendant are distinguishable from this case. The search in *State v. Lemieux*, 726 N.W.2d 783 (Minn.2007), was not conducted pursuant to a warrant; the seizure in *State v. Pietraszewski*, 285 Minn. 212, 172 N.W.2d 758 (1969), exceeded the scope of the warrant; and in *State v. Carter*, 697 N.W.2d 199 (Minn.2005), we recognized the defendant's reasonable expectation of privacy in a self-storage unit under the Minnesota Constitution but not under the U.S. Constitution.

A nighttime search of a home conducted pursuant to a warrant with an improperly authorized nighttime search clause does not implicate an absentee homeowners Fourth Amendment rights, at least under these facts.

ANDERSON, R. (dissenting).

I join in the dissent of Justice Barry Anderson.

2. The Court in *Alderman* noted the government's admission that in some instances "the equipment was installed under a broader grant of authority to the F.B.I., in effect at that time, which did not require specific authorization." *Alderman*, 394 U.S. at 170 n. 3, 89 S.Ct. 961; *see also* Michael A. DiSabatino,

GILDEA, L. (dissenting).

I join in the dissent of Justice Barry Anderson.

Annotation, *Construction and Application of National Security Exception to Fourth Amendment Search Warrant Requirement*, 39 A.L.R. Fed. 646, 651 (1978) (explaining that *Alderman* involved a warrantless national security wiretap).