*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0363**

State of Minnesota,
Appellant,

vs.

John Alvin Lindquist,
Respondent.

**Filed August 4, 2014
Reversed
Halbrooks, Judge**

Ramsey County District Court
File No. 62SU-CR-09-2153

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Robb L. Olson, Heather Monnens, White Bear Lake City Prosecutors, Geck Duea & Olson, PLLC, White Bear Lake, Minnesota (for appellant)

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota; and

Sharon R. Osborn, Osborn Law Office, L.L.C., Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

In this pretrial appeal, the state challenges the suppression of evidence from respondent's breath test, arguing that the state has met its burden of proving that respondent freely and voluntarily consented to the search under the totality of the circumstances.[1] We reverse.

**FACTS**

On February 22, 2009, at 5:15 a.m., White Bear Lake patrol officers were advised of a theft in progress involving two suspects in a white van and a white pickup truck with identified license-plate numbers. Officer Burth located both vehicles and pulled over the pickup truck, which was driven by respondent John Alvin Lindquist. During the stop, Officer Burth noted a strong odor of alcohol and observed that Lindquist's eyes were bloodshot and watery and his speech was slurred. In response to a question, Lindquist replied that he had had "a few beers." A preliminary breath test (PBT) resulted in a reading of .178.

Officer (Sergeant by the date of the hearing) Henry, who had arrived to assist, placed Lindquist under arrest and drove him to the White Bear Lake police station. Sergeant Henry confirmed that he read the standard implied-consent advisory to Lindquist "word for word," and that he does not believe that he said anything else to

---

[1] After a contested omnibus hearing, the district court denied Lindquist's motion as it related to the propriety of the initial investigatory stop, the basis to detain Lindquist for theft, the expansion of the stop to driving while impaired, the basis to request a preliminary breath test, and the basis to invoke the implied-consent advisory and request a chemical test.

Lindquist during the implied-consent process. Lindquist responded that he understood the advisory, and Sergeant Henry noted this on the advisory form, which was admitted as an exhibit. Lindquist made a telephone call and spoke with an attorney for approximately five minutes, after which he agreed to submit to a test. The implied-consent advisory process began at 5:55 a.m. and ended at 6:06 a.m.

Sergeant Clark testified about his investigation of the theft report and his recollection of the implied-consent process, which he had observed from the dispatch center. The district court asked Sergeant Clark to describe the booking room in which the implied-consent process took place, and he described it as "a concrete block room with green doors." The district court later asked detailed questions about how many doors there were and whether they were open or closed. The district court also asked how many officers were in the booking room, whether the officer reading the advisory was in uniform, whether the officer was standing or sitting, whether the officer had his sidearm, what his tone was, how close the officer was to Lindquist, and whether there was any physical contact with Lindquist.

Sergeant Clark gave detailed answers about the room setup, stated that the officers were in uniform but would not have been armed while in the booking room, and testified that Lindquist must have been non-combative because otherwise Clark would have been in the room assisting. Sergeant Clark did not recall seeing any physical contact, and regarding tone, he stated that "nothing jumps out at me as being unusual." On cross-examination, Sergeant Clark testified that he did not "know" if there was any coercion during the implied-consent process but that he "didn't recall seeing any." Although

3

police reports indicate that recordings of the implied-consent process were made and saved, no recording was played for the district court.[2]

Lindquist testified with respect to the theft investigation only, after the district court advised counsel that if Lindquist testified regarding the consent issue, it would "open[] the door for the [s]tate to ask those same questions." The prosecutor noted that under Minn. R. Evid. 611(b),[3] cross-examination of a defendant in a criminal case is not limited to the scope of direct examination. The district court rejected this interpretation without explanation, and stated, "we're not going to ask questions about the implied consent advisory or consent or coercion, what was said to get him to take the—or to provide the evidentiary sample." The state does not challenge this ruling on appeal.

The district court granted Lindquist's motion to suppress the evidence of his breath test.[4] In its order, the district court identified 20 factors bearing on its analysis of indicia of consent and noted that the record was silent on many of the factors. The district court ruled that the state did not meet its burden to prove by a preponderance of the evidence that Lindquist's consent was freely and voluntarily given. This appeal follows.

---

[2] We note that the hearings in this matter were held nearly five years after Lindquist's arrest.

[3] "An accused who testifies in a criminal case may be cross-examined on any matter relevant to any issue in the case, including credibility." Minn. R. Evid. 611(b).

[4] The district court denied Lindquist's motion as it relates to the propriety of the initial investigatory stop, the basis to detain Lindquist for theft, the expansion of the stop to investigate if Lindquist was driving while impaired, the basis to request a PBT, and the basis to invoke the implied-consent advisory and request a chemical test.

**D E C I S I O N**

When the state appeals a pretrial order suppressing evidence, it must "clearly and unequivocally show both that the [district] court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted). The state must satisfy the critical-impact test in order for this court to have jurisdiction. *State v. Baxter*, 686 N.W.2d 846, 850 (Minn. App. 2004). Critical impact is shown when "the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Kim*, 398 N.W.2d 544, 551 (Minn. 1987). The state need not "show that conviction is impossible after the pretrial order—only that the prosecution's likelihood of success is seriously jeopardized." *State v. Underdahl*, 767 N.W.2d 677, 683 (Minn. 2009).

Suppressed evidence that is unique in nature and quality is more likely to meet the critical-impact test. *In Re Welfare of L.E.P.*, 594 N.W.2d 163, 168 (Minn. 1999). We conclude that the breath-test evidence here is unique in nature and quality and that, without this evidence, the state's chances of successfully prosecuting Lindquist for driving while impaired are significantly reduced. The critical-impact test is therefore satisfied. Accordingly, we address the merits of the state's claim.

The state argues that the district court erred by suppressing the evidence of Lindquist's breath test. "When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo.'" *State v.*

5

*Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007).

Collection and testing of a person's breath constitutes a search under the Fourth Amendment to the United States Constitution, and therefore requires a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). The exigency created by the dissipation of alcohol in the body is insufficient to dispense on a per se basis with the warrant requirement. *Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013). But a warrantless search is valid if the person voluntarily consents to the search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

The state bears the burden of showing by a preponderance of the evidence that the defendant freely and voluntarily consented. *Id.* A driver's decision to take a test is not coerced or extracted "simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. Under *Brooks*, the issue of consent must be evaluated based on the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 568-69 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)).

The facts of this case are similar to those in *Brooks*. In *Brooks*, the appellant was arrested three different times for driving under the influence, was read the implied-consent advisory each time, spoke with an attorney each time, and submitted to testing each time. 838 N.W.2d at 570. Based on these facts, and the absence of any evidence of coercion in the record, our supreme court held that the appellant freely and voluntarily

consented in each instance. *Id.* at 572. The supreme court specifically noted that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571 (quotation omitted).

Here, as in *Brooks*, "the nature of the encounter, the kind of person [Lindquist] is, and what was said and how it was said" indicate that Lindquist freely and voluntarily consented to take the breath test. *See id.* at 569 (quotation omitted). Officer Burth came to suspect that Lindquist was driving under the influence when he pulled him over to investigate a theft and then noticed a strong odor of alcohol, bloodshot and watery eyes, and slurred speech. After Lindquist stated that he had had a few beers and he failed a PBT, he was arrested and taken to the White Bear Lake police station.

Sergeant Henry read the implied-consent advisory form to Lindquist that explained that Minnesota law required him to submit to a test, that refusing the test was a crime, and that he had the right to speak with an attorney. Lindquist made a phone call and spoke with an attorney for five minutes. He then agreed to take the breath test. That Lindquist "consulted with counsel before agreeing to take [the] test reinforces the conclusion that his consent was not illegally coerced." *See id.* at 571.

Lindquist's motion papers do not mention coercion other than to argue that criminal penalties for refusal are coercive as a matter of law. Because Lindquist did not make this argument in his motion, the state did not know it would be an issue at the omnibus hearing. The defense is required to give sufficient notice to the state of the grounds advanced for suppression so that the state has a full and fair opportunity to meet

7

its burden. *State v. Needham*, 488 N.W.2d 294, 296-97 (Minn. 1992). And at the hearing, Lindquist did not testify or argue that he was coerced into taking the breath test. Nor is there any evidence in the record that Lindquist "'was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired.'" *See Brooks*, 838 N.W.2d at 571.

The district court nevertheless determined that the record as developed did not permit a determination of consent.

> [T]he State did not inquire about the particular circumstances of [Lindquist's] consent beyond the most general aspects. The record shows that Sergeant Henry read the Implied Consent Advisory to [Lindquist] verbatim, that [Lindquist] had the opportunity to speak with an attorney, and that [Lindquist] signed the Implied Consent Advisory. Sergeant Henry also testified that [Lindquist] requested to speak with an attorney and did so for approximately five minutes.

The district court identified 20 factors that it considered in evaluating whether Lindquist's consent was freely and voluntarily given, and noted that the record was lacking on many of them.

> The record contains no additional facts regarding [Lindquist's] awareness or familiarity with the legal system, the length of [Lindquist's] detention, the number of police officers present while speaking with [Lindquist] before obtaining his consent, whether all of the officers present were in uniform or civilian clothes, whether any of the officers were armed, and if so, how they were armed, whether any of the officers used threats, physical intimidation, yelling or pounding, or actual force to obtain consent, the complete content of what the officers present said to [Lindquist], whether the officers made promises or misrepresentations in speaking with [Lindquist], the manner and tone in which the officers spoke to [Lindquist], whether [Lindquist] stood by silently or objected to the search, whether [Lindquist] asked

8

> any questions before giving his consent, and where the officers were situated with respect to [Lindquist], including how close the officers were to [Lindquist] when speaking to him.

The district court then ruled that the state had not met its burden of proving that Lindquist was **not** coerced into submitting to the breath test.

We conclude that the district court's expansion of the analytical framework set forth by our supreme court in *Brooks* is unwarranted and improper in the context of this case. Minnesota courts are obligated to follow the guidance provided by our supreme court, and this case fits squarely within the guidance provided in *Brooks*. No evidence suggests that Lindquist was coerced to submit to the breath test, and the record reflects that the police officers followed the procedures established under the implied-consent law. Given the nearly five-year gap between this DWI arrest and the omnibus hearing, it is understandable why the witnesses were unable to give definite responses to inquiries such as whether the officer was standing or sitting when he read the implied-consent advisory and the distance between the officer and Lindquist in the booking room.

From a procedural and factual standpoint, this DWI case is not unusual. Accordingly, we conclude that the district court erred by applying its own indicia-of-consent standard instead of relying on the guidance provided by our supreme court in *Brooks*. Consent is determined based on the totality of the circumstances of each case. But when the facts of a case are nearly identical to those in *Brooks*, it is error for a district court to substitute its own criteria for the factors identified in *Brooks* in applying this standard.

9

Applying the *Brooks* guidance to the facts here, the state proved by a preponderance of the evidence that Lindquist freely and voluntarily consented to the breath test. When consent to a breath test is given freely and voluntarily, a search warrant is not required. *See id.* at 568. The district court erred in suppressing the results of respondent's breath test when the totality of the circumstances demonstrates that respondent freely and voluntarily consented to the search.

**Reversed.**