*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1274**

State of Minnesota,
Appellant,

vs.

Maurice Dwayne Copeland,
Respondent.

**Filed March 11, 2024**
**Affirmed in part, reversed in part, and remanded**
**Halbrooks, Judge**[*]

Otter Tail County District Court
File No. 56-CR-22-2884

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michelle M. Eldien, Otter Tail County Attorney, Kathleen J. Schur, Assistant County Attorney, Fergus Falls, Minnesota (for appellant)

Isaiah P. Volk, Thorwaldsen & Malmstrom, PLLP, Detroit Lakes, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Halbrooks, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant State of Minnesota argues that the district court erred by granting respondent Maurice Dwayne Copeland's motion to suppress evidence and dismiss this matter. The state contends that evidence of a controlled substance was admissible because it was abandoned by Copeland. The state also argues that evidence of Copeland's intoxication would have inevitably been discovered even if Copeland had not been arrested for possessing a controlled substance. We affirm in part, reverse in part, and remand.

## FACTS

On December 15, 2022, at approximately 6:50 p.m., an Otter Tail County sheriff's deputy saw Copeland's truck in the ditch on the side of the road facing the wrong direction. Due to the vehicle's position and the wintry conditions, the deputy called for a tow. But because the deputy's shift was ending, he alerted Sergeant Allen Mekash.

Once Sergeant Mekash arrived, he talked with Copeland through the passenger window of the truck, as Copeland was still inside. Sergeant Mekash "observed [Copeland's] eyes were bloodshot and watery" but did not detect any odor of alcohol. Sergeant Mekash asked Copeland about where he was driving from and his intended destination before running Copeland's driver's license information through his patrol vehicle computer. Copeland's driver's license showed that he was a valid driver, without any warrants, and that he had a prior "drug related" offense.

While Sergeant Mekash was checking Copeland's information, the tow truck began to pull the truck out of the ditch while Copeland remained in the vehicle. Once it was back

on the road, the tow truck driver advised Copeland and Sergeant Mekash that the vehicle was inoperable. The three began to talk about where the truck should be towed and where Copeland would like to go. Copeland had four alternatives. The tow truck driver offered to give Copeland a ride home or to the repair shop in New York Mills. Sergeant Mekash told Copeland that he could either give Copeland a ride home or Copeland could call someone to pick him up. Copeland opted for the ride home with Sergeant Mekash.

As Copeland stepped out of the vehicle, a small black plastic box fell out of the open door onto the ground. Sergeant Mekash walked over to the box and picked it up. He later testified the box appeared to be "[a] magnetic key box" that was not transparent or open when he picked it up. Sergeant Mekash said, "Think you dropped your key box, here." Copeland replied, "Key box, what's that?" Sergeant Mekash stated, "That's what it looks like, it's what you'd put a spare key in, but." Sergeant Mekash then turned the plastic box over in his hands and opened it.

Inside the box was a plastic bag containing white powder which field tested positive for cocaine. Sergeant Mekash placed Copeland under arrest for possession of a controlled substance. Copeland said, "I didn't have that on me" to which Sergeant Mekash replied, "It just fell out of your truck, man." Sergeant Mekash handcuffed Copeland and searched him while standing at the hood of his patrol vehicle. After placing Copeland in the back of his patrol vehicle, Sergeant Mekash asked Copeland, "You haven't had anything to drink today, Maurice, have you?" Copeland admitted to having a beer and a shot earlier. Sergeant Mekash said, "I didn't smell it when I was talking to you earlier, I smell it now, okay?" Copeland admitted that a glass in his vehicle contained beer.

3

Sergeant Mekash transported Copeland to the Otter Tail Operations Center and administered a field sobriety test and a preliminary breath test to Copeland. Copeland's preliminary breath test showed a breath alcohol content of approximately 0.22.

The state charged Copeland with fifth-degree possession of a controlled substance, operating a motor vehicle while under the influence of alcohol, and operating a motor vehicle while under the influence of alcohol with an alcohol concentration of 0.08 or more within two hours. Copeland moved to suppress the evidence of the controlled substance and his intoxication, arguing that the key box had been searched illegally and that the resulting driving-while-impaired (DWI) evidence must also be suppressed as fruit of the poisonous tree.

The district court heard testimony from the sergeant and received in evidence the video from the sergeant's patrol vehicle. The sergeant testified that at all times he believed the key box belonged to Copeland. The sergeant also testified that he placed Copeland in the back passenger seat of the vehicle, which was the same place that Copeland would have been for the ride home even if he was not under arrest. In addition, the sergeant testified that the smell of alcohol from Copeland grew stronger over time.

The district court granted Copeland's motion suppressing the evidence and dismissing the charges. It found that the sergeant had not seized Copeland within the context of the Fourth Amendment. But the district court also found that Copeland's statement, "Key box, what's that?" could be interpreted as property abandonment. As a result, the district court ruled that Copeland abandoned the key box "in response to an

4

impermissible police intrusion." The district court also determined that the sergeant would not have inevitably pursued a DWI investigation if the key box had not been opened.

This appeal follows.

**DECISION**

We will only reverse a pretrial order that the state appeals if the state "clearly and equivocally" shows the order will have a "critical impact" on the case and was erroneous. *State v. Zanter*, 535 N.W.2d 624, 630 (Minn. 1995) (quotations omitted). A "critical impact" includes when a district court suppresses evidence that "significantly reduces the likelihood of a successful prosecution." *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn. 1987). The district court's suppression of both the controlled-substance evidence and the evidence of Copeland's intoxication certainly reduced the chances of a successful prosecution for possession of a controlled substance and driving while intoxicated. The critical impact standard is met here, so we next consider whether the district court's order was erroneous.

We review a district court's legal determinations for a pretrial suppression motion de novo and the factual findings for clear error. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)). The state argues that the district court erred by suppressing the evidence because the sergeant was permitted to search the key box without a warrant because it had been abandoned by Copeland and that the sergeant would have inevitably discovered Copeland's intoxication.

## I.

The district court found that Copeland had abandoned the key box in response to an illegal police intrusion. But not every encounter with police is a stop or seizure. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). A seizure occurs when a reasonable person would not have felt free to disregard police questions or leave. *Id.* A police officer approaching a person and asking questions absent additional actions does not generally constitute a seizure. *Id.* Here, Copeland was given four choices. The sergeant told Copeland that he could call someone or that the sergeant would give him a ride home. The tow truck driver offered to take Copeland home or to his repair shop in New York Mills. The sergeant did not force Copeland to accept a ride from him or force Copeland into his patrol vehicle until after he opened the key box. On this record, we conclude that the sergeant did not illegally stop or seize Copeland. Therefore, the box was not abandoned in response to an illegal police intrusion.

A person has the right to be free from unreasonable searches of property where that person has a reasonable expectation of privacy. *State v. Gail*, 713 N.W.2d 851, 860 (Minn. 2006). But a person no longer has a reasonable expectation of privacy in property that is abandoned. *State v. Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004). "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts." *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 370 (Minn. 1975) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)). "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the

search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question. . . ." *Id.*

The state argues that Copeland abandoned the key box by "den[ying] that it belonged to him" when the sergeant asked him about it. Our review of the record does not comport with that timeline. In the sergeant's patrol-vehicle video, the sergeant immediately picked the key box up after it fell out of Copeland's vehicle. The sergeant stated to Copeland, "Think you dropped your key box here," to which Copeland replied, "Key box, what's that?" Copeland did not deny the key box was his until after the sergeant had searched it. As a result, we conclude that the argument that Copeland abandoned the key box prior to the search lacks merit.

Further, the sergeant did not have a legal justification to search the key box. A search of a person's property when that person has a reasonable expectation of privacy must be either completed pursuant to a warrant or an exception to the warrant requirement. Minn. Const. art. I, § 10; *see also Gail*, 713 N.W.2d at 860. Here, the sergeant testified that he did not suspect Copeland of a crime at the time he opened the key box, that he did not have Copeland's consent to search it, and that he did not have a warrant. The state makes no arguments other than abandonment as an exception to the warrant requirement to justify the warrantless search. Therefore, we conclude that the sergeant's search of the key box was illegal and that the evidence found inside it must be suppressed under the exclusionary rule.

## II.

The state next argues that, even if the sergeant had not searched the key box, he would have inevitably detected the odor of alcohol on Copeland and, therefore, the subsequent evidence of intoxication is admissible under the inevitable-discovery rule. If a police officer obtains evidence through an illegal search but the state can show by a preponderance of the evidence that the officer would have inevitably discovered the evidence "through lawful means," the evidence may be admitted. *See State v. Licari*, 659 N.W.2d 243, 254 (Minn. 2003) (quoting *Nix v. Williams*, 476 U.S. 431, 444 (1984)). To meet this burden the state must show the discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.* (quoting *Nix*, 467 U.S. at 444-45, n.5).

Here, the sergeant testified that he could smell alcohol when handcuffing Copeland and placing him in the patrol vehicle and that the smell grew stronger as time went on. Given that Copeland would have been in the same seat in the squad car whether he was arrested or just getting a ride home and that the smell of alcohol intensified in the confined space of a vehicle, we conclude that the state met its burden to show that the sergeant would have inevitably discovered evidence of Copeland's intoxication. We therefore reverse the district court's suppression of the DWI evidence and remand for trial on the DWI charges.

**Affirmed in part, reversed in part, and remanded.**